

September 19, 2017

<u>Via ECF</u>

Honorable Steven I. Locke
United States District Court, EDNY
100 Federal Plaza
Central Islip, New York  11722

Re:  **<u>Emerson Electric Co. v. Charles Holmes, et al. 16-CV-1390 (LDW)(SIL)</u>**

Dear Judge Locke,

We represent defendant Charles Holmes ("Holmes") in this action.  Pursuant to Local Civil Rule 37.3(c) and Your Honor's Individual Motion Practice Rule 4(A)(i), we submit this letter seeking an order to compel plaintiff Emerson Electric Co. ("Emerson"):  (1) to produce responsive documents; (2) to respond fully to interrogatories with information that is relevant to their claims and Holmes' defenses; and (3) to compel Emerson's 30(b)(6) witness to testify regarding subject areas that are the appropriate area of inquiries in this action.[1]

On or about March 21, 2016, the Plaintiff commenced this action on behalf of itself, and its affiliate, seeking to void certain transfers and seeking to pierce the corporate veil and hold Holmes liable as an alter ego of Defendant Asset Management Associates of New York Inc. ("AMA").  Plaintiff's attempt to hold Holmes individually liable for the obligations of AMA is based on specious legal theories and twisted factual assertions.  Plaintiff has refused to provide discovery on the basis that they do not believe it is relevant to their claims.  More importantly, Holmes is entitled to discovery that will aid in the assertion of his legal defenses.

Plaintiff has failed to provide any significant discovery in this case.  Plaintiff's discovery consists of largely boilerplate objections to Holmes' discovery requests with little to no information provided in response.  *See* Plaintiff's Objections and Reponses to Holmes's First Set of Interrogatories (Exh. A) and Plaintiff's Objections and Responses to Defendant's First Request for the Production of Documents.  (Exh. B).  Plaintiff's production consists solely of documents it previously received from Holmes, some documents from the underlying litigation, and a draft of the underlying agreements.  It is clear that Plaintiff has not produced any requested

---

[1] On June 15, 2017, Plaintiff filed a pre-motion request to strike the affirmative defenses of the Defendant Holmes.  Although the motion was clearly untimely and Defendant believes wholly without merit, Judge Wexler indicated that he would conference the issue on August 29, 2017, but adjourned it at Plaintiff's request and has not rescheduled it. (*See* Text Order dated Aug. 25, 2017)  Because it is unlikely that the parties will have clarity on the impact of any ruling by Judge Wexler, Defendant is making this motion to avoid any issues at the depositions and obtain responsive documents in advance thereof.



Honorable Steven I. Locke
September 19, 2017
Page 2

documents requiring a search of Plaintiff's e-mails and files regarding the underlying transaction. Plaintiff has taken the position that the circumstances surrounding the underlying transaction are irrelevant. Moreover, even after Defendant agreed to limit the scope of discovery (Exh. C), the Plaintiff only provided conclusory responses to the interrogatories and additional drafts of agreements. *See* Plaintiff's Supplemental Responses. (Exh. D). Plaintiff also has refused to identify individuals in response to interrogatories and simply refers to the Plaintiff as a corporate entity as opposed to individuals who can be identified or deposed. Where Plaintiff says that no such documents exist, it does not appear that any search has been conducted.

Defendant has sought documents, information and testimony regarding, among other things: (1) steps undertaken by Plaintiff to ascertain the credit-worthiness of AMA and/or Holmes; (2) approvals, including board approval or approval by David Farr CEO and Chairman of the Board, authorizing Emerson Telecommunication Products LLC ("ETP") to enter into the November 8, 2006 Acquisition Agreement by and between ETP and AMA; (3) approvals authorizing Emerson to enter into the November 8, 2006 Transition Services Agreement between Emerson and AMA; (4) the representations and warranties in Article IV of the Acquisition Agreement, including without limitation who at ETP and Emerson received such representations and warranties and any consideration of ETP and/or Emerson regarding same; (5) a June 21, 2006 Memorandum referenced in Plaintiff's response to Interrogatory No. 2, including without limitation who at ETP and Emerson received the June 21, 2006 Memorandum and any consideration by Emerson and/or ETP regarding same; (6) Emerson and/or ETP's knowledge of the funds AMA used and/or any loans AMA received in connection with its November 9, 2006 acquisition of all of ETP's capital stock of Emerson Network Power Optical Connectivity Solutions, Inc. and certain assets of Emerson Network Power Connectivity Solutions, Inc., including the wire transfer for $6,000,000; and (7) the change of name of the entity Emerson Network Power Optical Connectivity Solutions, Inc. to CSI Technologies, Inc. and the ownership structure of CSI.

In response, Plaintiff has indicated that the representations and warranties in Article IV of the Acquisition Agreement were relied upon, but will not provide any information regarding internal discussions of the provision; likewise, Plaintiff relies on the June 21, 2006 Memorandum provided by Defendant, but will not identify those individuals who saw it or any internal communications regarding it. Similarly, Defendant contends that Plaintiff was aware that AMA borrowed the funds AMA used in connection with its November 9, 2006 acquisition of all of ETP's capital stock of Emerson Network Power Optical Connectivity Solutions, Inc. and certain assets of Emerson Network Power Connectivity Solutions, Inc., including the wire transfer for $6,000,000 and was aware that AMA assigned the contracts to CSI Technologies, Inc. However, Plaintiff has provided no information on these issues.

In addition, James Switzer, a non-party former employee of the Plaintiff, who Plaintiff indicated they could not locate, was easily located by Defendant and properly subpoenaed. (Exh. E).



Honorable Steven I. Locke
September 19, 2017
Page 3

Thereafter, Plaintiff's counsel indicated they would be representing him and asked that the deposition be adjourned. Plaintiff's counsel has indicated that Mr. Switzer will not testify regarding certain subjects. Likewise, Holmes served a notice for a 30(b)(6) deposition (Exh. F), which was also adjourned at Plaintiff's request. Plaintiff's counsel has likewise indicated that Plaintiff will not testify regarding certain subjects listed in the 30(b)(6) notice, but has not yet put those objections in writing. Because these depositions will take place in St. Louis, Missouri, Defendant does not want to incur the cost and expense of the depositions in the event that Plaintiff seeks to bar areas of testimony or instruct the witness not to answer.

Defendant requires this discovery in the form of interrogatory responses, documents, and deposition testimony in order to address the allegations in the Complaint and to prepare its defenses, which include defenses of estoppel and unclean hands, among others. One of Defendant's primary contentions is that this lawsuit is an end-around attempt to hold Holmes' personally liable in the absence of a contractual right to do so. Estoppel is available as a defense because Plaintiff is seeking to hold Holmes personally liable when it knew that Holmes was not agreeing to back the personal obligations of AMA. *See Brunswick Corp. v. Waxman*, 599 F.2d 34, 36 (2d Cir. 1979) ("Under these circumstances [Plaintiff] obtained precisely what it bargained for, and it did not bargain for or contemplate the individual liability … which it now seeks to enforce."); *Favour Mind Ltd. v. Pac. Shores, Inc.*, No. 98 Civ. 7038 (GBD), 2004 U.S. Dist. LEXIS 637, at *19-21 (S.D.N.Y. Jan. 20, 2004) (refusing to pierce the corporate veil even though the corporation was likely the owner's alter ego because the plaintiff was aware of the nature of the relationship). Likewise, Defendant has invoked the doctrine of unclean hands. "The doctrine of unclean hands 'closes the door of a court of equity to one tainted with inequitableness or bad faith relative to the matter in which he seeks relief, however improper may have been the behavior of the defendant.'" *839 Cliffside Ave. LLC v. Deutsche Bank Nat'l Trust Co.*, No. 15-CV-4516 (SIL) , 2016 U.S. Dist. LEXIS 131411, at *34 (E.D.N.Y. Sept. 23, 2016) (citation omitted). Here, Defendant argues that Plaintiff has and continues to engage in bad faith in connection with seeking to hold Holmes personally liable for the underlying judgments given their knowledge prior to the transaction, during the litigation, and their lack of reliance on the credit worthiness of Holmes.

We therefore respectfully request an Order compelling Plaintiff to supplement their current discovery responses, overrule any objections to the scope of the 30(b)(6) notice, and for such other and further relief as this Court deems just and proper.

Respectfully submitted,

/s/ Barry M. Kazan

Barry M. Kazan