UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x
EMERSON ELECTRIC CO.,

                     Plaintiff,

   -against-

CHARLES S. HOLMES and ASSET
MANAGEMENT ASSOCIATES OF NEW
YORK, INC.,

                     Defendants.

-------------------------------------------------------------------x

**REPORT AND
RECOMMENDATION**
16-cv-1390 (PKC)(SIL)

**STEVEN I. LOCKE, United States Magistrate Judge:**

By Complaint filed on March 21, 2016, Plaintiff Emerson Electric Co.

("Emerson" or "Plaintiff") commenced this diversity action against Defendants

Charles S. Holmes ("Holmes") and Asset Management Associates of New York, Inc.

("AMA") (together, "Defendants") seeking post-judgment relief, pursuant to Rule 69

of the Federal Rules of Civil Procedure ("Fed. R. Civ. P.") and New York Civil Practice

Law & Rules ("CPLR") § 5225 (b) to avoid fraudulent conveyances from AMA to its

president and sole owner, Holmes, under New York Debtor and Creditor Law ("DCL")

§§ 273-a and 276,[1] and to "pierce the corporate veil" of AMA. *See* Complaint

("Compl."), Docket Entry ("DE") [1].   In response, Holmes asserted numerous

affirmative defenses. *See* Answer, DE [5].   Presently before the Court, on referral

from the Honorable Pamela K. Chen, are Plaintiff's motions:  (i) to strike Holmes's

affirmative defenses of equitable estoppel and unclean hands pursuant to Fed. R. Civ.

---

[1] As discussed below, on its motion for summary judgment, Emerson adds two additional claims under DCL §§ 273 and 274, which it had not pleaded in its Complaint.

P. 12(f), *see* DE [37]; (ii) for summary judgment against Holmes pursuant to Fed. R. Civ. P. 56, *see* DE [55]; and (iii) for default judgment against AMA pursuant to Fed. R. Civ. P. 55, *see* DE [55].  For the reasons set forth herein, the Court respectfully recommends that Emerson's motion for summary judgment be granted in part and denied in part and that the motion to strike and the motion for default judgment be denied.

## I. BACKGROUND

The following facts are taken from the pleadings, affidavits, exhibits and the parties' Local Civil Rule 56.1(a) statements.  Unless otherwise noted, these facts are not in dispute.  Plaintiff is a Missouri corporation with its principal place of business in St. Louis, Missouri.  *See* Compl. ¶ 7.  Holmes is an individual residing at 26 Redcoats Lane, Sag Harbor, New York 11963.  *See id.* at ¶ 8.  AMA was a New York corporation that ceased operations in February 2014 with the filing of a bankruptcy petition in the United States Bankruptcy Court for the District of New Jersey.  *See* Declaration of Leonard F. Lesser in Support of Motion for Summary Judgment ("Lesser Decl."), DE [57], Exhibit ("Ex.") GG, B1 (Official Form 1) (04/13).

This litigation stems from two judgments (the "Judgments") entered in favor of Plaintiff upon the resolution of disputes regarding two agreements between Emerson and AMA.  AMA did not appeal the judgments or make any motion to vacate or otherwise modify them.  To date, these Judgments—entered on January 9, 2014 and August 13, 2015—have not been satisfied, and Plaintiff seeks post-judgment relief to recover from AMA's president and sole owner, Holmes.

A. **The January 9, 2014 Judgment**

On November 8, 2006, Emerson Telecommunications Products LLC ("ETP"),
Emerson's affiliate, and AMA executed an Acquisition Agreement which transferred
to AMA "the capital stock of Emerson Network Power Optical Connectivity Solutions,
Inc . . . . as well as certain business assets of Emerson Network Power Connectivity
Solutions, Inc." *See Emerson Elec. Co. v. Asset Mgmt. Assocs. of New York, Inc.*, No.
08-cv-1489, 2012 WL 976051, at *1 (E.D.N.Y. Mar. 20, 2012); Lesser Decl., Ex. DD,
Acquisition Agreement by and between Emerson Telecommunication Products LLC
and Asset Management Associates of New York Inc., dated November 8, 2006.  The
Acquisition Agreement provided that the name of Emerson Network Power Optical
Connectivity Solutions, Inc. would be changed to CSI Technologies, Inc. ("CSI")
immediately after closing.  *See* Lesser Decl., Ex. DD, § 2.1 (c).  Holmes, as CSI's sole
stockholder, executed a "Written Consent of the Sole Stockholder of Emerson
Network Power Optical Connectivity Solutions, Inc." to reflect the name change.  *See
Emerson Elec. Co.*, 2012 WL 976051, at *1.  AMA paid $6,000,000.00 for CSI.  *See*
Plaintiff's Local Civil Rule 56.1(a) Statement in Support of its Motion for Summary
Judgment ("Plaintiff 56.1(a) Statement"), DE [56], ¶ 14; Defendant Charles S.
Holmes' Response to Plaintiff's Local Civil Rule 56.1(a) Statement in Support of its
Motion for Summary Judgment ("Holmes 56.1(a) Response"), DE [64], ¶ 14.  After
AMA's purchase of CSI, AMA conveyed its ownership of all the shares of common
stock of CSI to Holmes.  *See* Lesser Decl., Ex. CC, Holmes Deposition Transcript, Oct.
7, 2009 at 24:23-25:25.

The Acquisition Agreement permitted the parties to negotiate a post-closing adjustment to the purchase price if, at the time of closing, the financial position of CSI differed from what was reflected in the purchase price. *See* Lesser Decl., Ex. DD, § 2.5. After closing, ETP sought a purchase price adjustment and payment in ETP's favor from AMA. *See* Plaintiff 56.1(a) Statement ¶ 16; Holmes 56.1(a) Response ¶ 16. AMA disputed ETP's demand for a purchase price adjustment, and the parties engaged in unsuccessful negotiations in an effort to resolve their dispute. *See* Plaintiff 56.1(a) Statement ¶¶ 17-18; Holmes 56.1(a) Response ¶¶ 17-18. Pursuant to the terms of the Acquisition Agreement, the parties ultimately submitted their dispute to arbitration. *See* Plaintiff 56.1(a) Statement ¶ 21; Holmes 56.1(a) Response ¶ 21. On November 7, 2013, an Arbitration Award granting ETP's post-closing adjustment claim was issued, which the Court confirmed on December 17, 2013. *See* Plaintiff 56.1(a) Statement ¶¶ 34-35; Holmes 56.1(a) Response ¶¶ 34-35; *see also* Lesser Decl., Ex. R, Notice of Motion to Confirm Arbitration Award. On January 9, 2014, the Court entered judgment against AMA on the Arbitration Award in the amount of $1,965.081.40 plus 9% post-judgment interest pursuant to CPLR §§ 5003 and 5004. *See* Lesser Decl., Ex. E, *Asset Mgmt. Assocs. of N.Y., Inc. v. Emerson Telecommunication Products LLC*, 08-cv-2128 (E.D.N.Y. Jan. 9, 2014).

**B.    The August 13, 2015 Judgment**

Concurrent to the Acquisition Agreement, on November 8, 2006, Emerson and AMA executed a Transition Services Agreement ("TSA") pursuant to which Plaintiff agreed to provide manufacturing and support operations for CSI for one year, and

AMA agreed to reimburse Emerson for those services. *See* Lesser Decl., Ex. EEE, Transition Services Agreement. AMA stopped reimbursing Plaintiff, and on April 10, 2008, Emerson sued AMA for breach of contract. *See Emerson Elec. Co. v. Asset Mgmt. Assocs. of N.Y., Inc.*, 08-cv-1489 (E.D.N.Y. 2008), DE [1]. The Court granted summary judgment on Plaintiff's breach of contract claim and directed a trial to be held on damages and reasonable attorneys' fees. *See Emerson Elec. Co.*, 2012 WL 976051, at *7, *9. Following a bench trial, the Court entered a judgment in favor of Emerson in the amount of $1,966,246.35 on August 13, 2015. *See Emerson Electric Co.*, 08-cv-1489 (E.D.N.Y.), DE [82]. Subsequent to the August 13, 2015 Judgment, ETP assigned the January 9, 2014 Judgment to Emerson for consolidation of its judgment and enforcement claims against AMA. *See* Lesser Decl., Ex. S, Assignment of Judgment, 08-cv-2128, dated December 21, 2015.[2]

## C. Procedural History of This Case

On March 21, 2016, Emerson commenced this suit against Defendants. *See* DE [1]. Plaintiff alleged that Holmes has "methodically stripped AMA of its assets by disregarding corporate formalities for the purpose of avoiding collection on the Judgments" and "caused AMA to fraudulently transfer assets and substantial cash to his personal bank accounts, all without fair consideration . . . to hinder, delay and defraud [AMA's] creditors, including [Plaintiff]." Compl. ¶¶ 5-6. In response, Holmes asserted eight affirmative defenses, including equitable estoppel and unclean hands.

---

[2] Holmes disputes the validity of this assignment but does not provide any explanation of his position to raise a genuine issue of fact regarding the assignment's validity. *See* Defendant Charles S. Holmes' Memorandum of Law in Opposition to Plaintiff's Motion for Summary Judgment ("Holmes SJ Opp."), DE [62], 7.

*See* Answer, 18-19.  AMA failed to appear or otherwise defend this action, and on October 25, 2016, the Clerk of the Court entered default against it.  *See* DE [16].

Plaintiff requested a pre-motion conference regarding its motion to strike Holmes's affirmative defenses of equitable estoppel and unclean hands on June 15, 2017.  *See* DE [22].  The Honorable Judge Leonard D. Wexler, who was originally assigned to the case, referred Emerson's request for a pre-motion conference and any resulting motions to this Court on October 5, 2017, and on January 31, 2018, Plaintiff filed its motion to strike Holmes's equitable estoppel and unclean hands affirmative defenses.  *See* Electronic Order, dated October 5, 2017; DE [37].  Following several status conferences and discovery motions, *see* DEs [26], [30], [32], [34], while the motion to strike was pending, Emerson and Holmes requested a pre-motion conference regarding Plaintiff's motion for summary judgment and Holmes's cross-motion for partial summary judgment.  *See* DEs [44], [45].  Upon reassignment of this case to the Honorable Judge Pamela K. Chen, Judge Chen referred the parties' request for a pre-motion conference and any resulting motions to this Court on May 11, 2018.  *See* Minute Order, dated May 11, 2018.  On July 18, 2018, this Court held a pre-motion hearing and set a briefing schedule for Emerson's motion for summary judgment and Holmes's cross-motion for partial summary judgment.  *See* DE [52].  On November 21, 2018, Holmes informed this Court that he would no longer file a cross-motion for summary judgment, *see* DE [54], and the Court modified the briefing schedule accordingly.  *See* Electronic Order, dated November 23, 2018.  Pursuant to this Court's modified briefing schedule, on January 11, 2019, Plaintiff filed its motion

for summary judgment against Holmes and for default judgment against AMA, and Holmes filed his opposition to the motion for summary judgment. *See* DEs [55]-[63].

## II. LEGAL STANDARDS

### A. <u>Motion to Strike</u>

Fed. R. Civ. P. 12(f) provides that a court "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f).  The court may act on its own or "on motion made by a party either before responding to the pleading, or, if a response is not allowed, within 21 days after being served with the pleading." *Id.*  To prevail on a motion to strike, the movant must establish that:  "(1) there is no question of fact which might allow the defense to succeed; (2) there is no question of law which might allow the defense to succeed; and (3) the plaintiff would be prejudiced by inclusion of the defense." *Figueroa v. RSquared NY, Inc.*, No. 14-cv-4390, 2015 WL 3936256, at *2 (E.D.N.Y. June 26, 2015).

The Second Circuit recently analyzed these three factors in the specific context of motions to strike affirmative defenses.  *See GEOMC Co., Ltd. v. Calmare Therapeutics Inc.*, 918 F.3d 92, 95 (2d Cir. 2019).  With respect to the first factor, the Second Circuit clarified the pleading standard applicable to affirmative defenses—an issue that has long divided district courts—concluding that the plausibility standard established in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955 (2007) applies to all pleadings, including the pleading of an affirmative defense.  *Id.* at 97-98.  Applying *Twombly*'s plausibility standard, however, is a "context specific task."  *Id.*

at 98 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679, 129 S. Ct. 1937, 1940 (2009)). When determining whether an affirmative defense has satisfied the plausibility standard, courts are to consider two aspects that are unique to affirmative defenses. First, while "[t]he pleader of a complaint has the entire time of the relevant statute of limitations to gather facts necessary to satisfy the plausibility standard," the procedural time limitations within which a defendant must respond to a complaint constrict the defendant's ability to gather facts necessary to plead a plausible affirmative defense. *Id.* Second, a defendant's ability to gather the facts needed to plead an affirmative defense will vary depending on the nature of the affirmative defense. For instance, while "the facts needed to plead a statute-of-limitations defense will usually be readily available[,] the facts needed to plead an ultra vires defense, for example, may not be readily known to the defendant," and in such a circumstance, a "relaxed application of the plausibility standard" would be warranted. *Id.* Regarding the second factor—the legal sufficiency of an affirmative defense—the Second Circuit found no revision necessary, as "[t]here is no dispute that an affirmative defense is improper and should be stricken if it is a legally insufficient basis for precluding a plaintiff from prevailing on its claims." *Id.* Finally, the Second Circuit found that whether the third factor, prejudice, should be a basis for striking an affirmative defense depends on when the defense is presented. *Id.* Thus, a court should allow a valid defense that was timely filed, even if the defense prejudices the plaintiff by expanding the scope of the litigation. *Id.* By contrast, where a defense is presented beyond the Rule 12(f) time limits, especially at a late

stage in the litigation, courts should consider prejudice and in some cases prejudice may even be the determinative factor in granting a motion to strike. *Id.* at 99.

## B. Summary Judgment

Pursuant to Fed. R. Civ. P. 56, a "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the "difficult" burden of establishing that there are no genuine issues of material fact such that summary judgment is appropriate. *See Jeffreys v. City of New York*, 426 F.3d 549, 554 (2d Cir. 2005). In deciding a motion for summary judgment, the court "is not to weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments." *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 122 (2d Cir. 2004); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986) (holding that a motion for summary judgment should be denied if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party").

Once the movant has met its initial burden, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . [T]he nonmoving party must come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87, 106 S. Ct. 1348, 1356 (1986) (internal quotation marks and citation omitted); *see also Maxton v. Underwriter Labs., Inc.*, 4

F. Supp. 3d 534, 542 (E.D.N.Y. 2014) ("An issue of fact is considered 'genuine' when a reasonable finder of fact could render a verdict in favor of the non-moving party.") (citation omitted).   In determining whether summary judgment is warranted, "the court's responsibility is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried, while resolving ambiguities and drawing reasonable inferences against the moving party." *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 11 (2d Cir. 1986) (citation omitted); *see also Jeffreys*, 426 F.3d at 553 ("Assessments of credibility and choices between conflicting versions of the events are matters for the jury, not for the court on summary judgment.") (internal quotation marks and citation omitted).

## C. **Default Judgment**

Motions for default judgment are governed by Fed. R. Civ. P. 55, which provides for a two-step process. *See* Fed. R. Civ. P. 55; *Priestley v. Headminder, Inc.*, 647 F.3d 497, 504-05 (2d Cir. 2011).   Initially, the moving party must obtain a certificate of default from the Clerk of the Court. *See* Fed. R. Civ. P. 55(a).   Once the certificate of default is issued, the moving party may apply for entry of a default judgment. *See id.* at 55(b).   Where a default occurs, the well-pleaded factual allegations set forth in a complaint relating to liability are deemed true. *See Vermont Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 246 (2d Cir. 2004); *see also* Fed. R. Civ. P. 8(b)(6) ("An allegation—other than one relating to the amount of damages— is admitted if a responsive pleading is required and the allegation is not denied."). However, the entry of a default judgment is "entrusted to the sound judicial discretion

of the court," and a party is not entitled to a default judgment as a matter of right. *Allstate Ins. Co. v. Howell*, No. 09-cv-4660, 2013 WL 5447152, at *1 (E.D.N.Y. Sept. 30, 2013) (citation omitted).

A plaintiff seeking a default judgment must demonstrate that its "uncontroverted allegations, without more, establish the defendant's liability on each asserted cause of action." *Gunawan v. Sake Sushi Rest.*, 897 F. Supp. 2d 76, 83 (E.D.N.Y. 2012). In determining whether to grant a motion for default judgment, the court has the "responsibility to ensure that the factual allegations, accepted as true, provide a proper basis for liability and relief." *Ferrera v. Tire Shop Ctr.*, No. 14-cv-4657, 2015 WL 3562624, at *2 (E.D.N.Y. Apr. 6, 2015), *report and recommendation adopted*, No. 14-cv-4657, 2015 WL 3604078 (E.D.N.Y. June 5, 2015) (internal quotation marks and citation omitted). Accordingly, prior to entering a default judgment, the court must determine whether the plaintiff's allegations establish the defendant's liability "as a matter of law." *Bricklayers & Allied Craftworkers Local 2, Albany, N.Y. Pension Fund v. Moulton Masonry & Const., LLC*, 779 F.3d 182, 187 (2d Cir. 2015) (citation omitted).

## III. DISCUSSION

### A. <u>Motion to Strike Affirmative Defenses</u>

The Court first considers Emerson's motion to strike Holmes's third and seventh affirmative defenses, which assert that Plaintiff's claims are barred by the doctrines of estoppel and unclean hands. Emerson argues that these affirmative defenses should be stricken because "they are comprised of bald legal conclusions that

are devoid of any supporting factual allegations, and are therefore facially insufficient." Plaintiff's Memorandum of Law in Support of its Motion to Strike ("Plaintiff Motion to Strike Mem."), DE [38], 8. To succeed on a defense of equitable estoppel, a defendant must demonstrate: (1) that the plaintiff made a material misrepresentation, (2) upon which the defendant relied, (3) to her detriment. *King v. C.A.C. Indus., Inc.*, No. 00-cv-0449, 2018 WL 5084818, at *4 (E.D.N.Y. Oct. 17, 2018) (citing *Lee v. Burkhart*, 991 F.2d 1004, 1009 (2d Cir. 1993)). The doctrine of unclean hands bars equitable relief where the defendant establishes: "(1) that the plaintiff is guilty of immoral, unconscionable conduct directly related to the subject matter in litigation; (2) that the conduct was relied upon by the defendant; and (3) that the defendant was injured thereby." *In re Sterling*, No. 14-cv-12608, 2018 WL 313085, at *7 (Bankr. S.D.N.Y. Jan. 5, 2018) (internal quotation marks and citation omitted). In order to recommend that Holmes's affirmative defenses of equitable estoppel and unclean hands be stricken, the Court must find that: (1) there are no questions of fact that might allow these defenses to succeed; (2) there are no substantial questions of law that might allow the defenses to succeed; and (3) Plaintiff would be prejudiced by the inclusion of these two defenses. *See GEOMC*, 918 F.3d at 96.

As an initial matter, the Court considers whether Holmes pleads enough facts to give rise to a plausible affirmative defense of equitable estoppel and unclean hands. *See id.* at 97. While a court assessing the sufficiency of an affirmative defense should "construe the pleadings liberally to give the defendant a full opportunity to support its claims at trial, after full discovery has been made . . . . conclusory assertions,

12

absent any supporting factual allegations are insufficient as a matter of law." *Cartier Int'l AG v. Motion in Time, Inc.*, No. 12-cv-8216, 2013 WL 1386975, at *3 (S.D.N.Y. Apr. 5, 2013). Holmes's affirmative defense of equitable estoppel alleges, in its entirety: "The Complaint and its claims are barred by the doctrine[] of . . . estoppel. . ." Answer, 19. Equally conclusory is Holmes's affirmative defense of unclean hands: "Plaintiff's claims are barred by the doctrine of unclean hands." *Id*.

In defense of his conclusory assertions, Holmes cites to several cases holding that affirmative defenses are not subject to *Twombly's* plausibility standard. *See* Defendant Charles S. Holmes' Memorandum of Law in Opposition to Plaintiff's Motion to Strike ("Holmes Motion to Strike Opp."), DE [41], 6-8. These cases, however, all precede the Second Circuit's *GEOMC* decision that clarified the proper pleading standard of affirmative defense. *See* 918 F.3d at 98. In light of the Second Circuit's recent holding that the plausibility standard of *Twombly* applies to pleading affirmative defenses, the Court finds that Holmes's affirmative defenses require "factual allegations to make them plausible." *See id.* at 99; *see also Radiancy, Inc. v. Viatek Consumer Prods. Grp., Inc.*, 138 F. Supp. 3d 303, 319 (S.D.N.Y. 2014), *as amended* (Apr. 1, 2014) ("Pleading the words 'unclean hands' without more . . . is not a sufficient statement of such defense.") (internal quotation marks and citation omitted); *Fed. Nat'l. Mortg. Ass'n v. Olympia Mortg. Corp.*, No. 04-cv-4971, 2007 WL 3077045, at *4 (E.D.N.Y. Oct. 22, 2007) (striking unclean hands and equitable estoppel defenses unsupported by factual allegations because "[m]erely pleading a defense, without factual allegations, is insufficient") (citation omitted). Such factual

13

allegations must be set forth in the pleadings, and a conclusory affirmative defense does not become facially sufficient by virtue of a defendant's factual assertions during discovery. *See EEOC v. UPS*, No. 15-cv-4141, 2017 WL 2829513, at *6 (E.D.N.Y. June 29, 2017) (internal quotation marks and citation omitted); *see also Upstate New York Eng'rs Health Fund v. John F. & John P. Wenzel Contractors, Inc.*, No. 17-cv-0570, 2019 WL 1208230, at *4 (N.D.N.Y. Mar. 14, 2019) ("Generally, extrinsic evidence . . . cannot be considered in a true motion to strike.") (internal quotation marks and citation omitted).   Accordingly, the fact that Holmes provided discovery on his affirmative defenses does not remedy the insufficiency of his pleadings.

The Court next considers whether there are questions of law that might allow the defenses to succeed.   Issues of law are "viewed as determinable only after discovery and a hearing on the merits," and courts are "very reluctant" to determine substantial or disputed issues of law on a motion to strike.   *In re Lehman Bros. Holdings Inc.*, 474 B.R. 441, 447 (Bankr. S.D.N.Y. 2012); *see also Lumos Tech. Co. v. JEDMED Instrument Co.*, No. 16-cv-6939, 2017 WL 1322213, at *1 (S.D.N.Y. Apr. 10, 2017) ("[S]everal courts have noted that a motion to strike for insufficiency was never intended to furnish an opportunity for the determination of disputed and substantial questions of law.").

Holmes relies on the Second Circuit decision in *Brunswick Corp. v. Waxman*, 599 F.2d 34 (2d Cir. 1979) and its progeny for both of the affirmative defenses at issue, *see* Holmes Motion to Strike Opp., 14, which Emerson argues is inapplicable. In *Brunswick*, the Second Circuit held that when a party who enters into an

agreement with a corporation with actual or imputed knowledge that the corporation's owner wishes to avoid personal liability, piercing the corporate veil to hold the owner liable would "thwart" equity, because the party "obtained precisely what it bargained for, and it did not bargain for or contemplate the individual liability of the [corporation's owner]." *Brunswick*, 599 F.2d at 36. The corporation in *Brunswick* was a "dummy corporation," created for the sole purpose of eliminating the owner's personal liability to creditors. *See id.* at 35-36. Emerson argues that *Brunswick* is inapplicable because AMA was not a dummy corporation created at the time it entered into the 2006 transaction with ETP to acquire CSI. *See* Plaintiff Motion to Strike Mem., 11-12. According to Holmes, however, the fact that *Brunswick* dealt with a dummy corporation is "mere happenstance," and subsequent cases have applied *Brunswick* to bar alter ego liability based on a party's knowledge of other risks associated with dealing with a corporation, such as the corporation's poor financial performance. Holmes Motion to Strike Opp., 15. Thus, to issue a recommendation granting Plaintiff's motion to strike Holmes's affirmative defenses, this Court would need to resolve disputed questions of law regarding the applicability of *Brunswick*. Accordingly, Emerson has failed to show that there are no substantial questions of law that might allow Holmes's defenses to succeed.

Finally, the Court must consider whether inclusion of these two affirmative defenses would prejudice Emerson. "Absent a showing of prejudice, Plaintiff's motion must be denied." *U.S. EEOC v. A & F Fire Prot. Co.*, No. 17-cv-4745, 2018 WL 7252950, at \*5 (E.D.N.Y. Dec. 13, 2018), *report and recommendation adopted*, No. 17-

cv-4745, 2019 WL 482201 (E.D.N.Y. Feb. 7, 2019) (citation omitted).  Here, Emerson argues that the inclusion of these affirmative defenses will "prejudice Plaintiff by needlessly lengthening and complicating the discovery process and trial of this matter."  Plaintiff Motion to Strike Mem., 16.  Increased time of litigation may constitute sufficient prejudice to warrant granting a motion to strike.  *See U.S. EEOC*, 2018 WL 7252950, at *5 (citation omitted).  However, the moving party's "mere assertions" that she is prejudiced will not suffice.  *Id.*

Emerson requested a pre-motion conference for a motion to strike on June 15, 2017, more than one year after Holmes had asserted his affirmative defenses and the Rule 12(f) deadline had passed.  *See* DE [22].  Further, by the time Plaintiff filed its motion to strike, on January 31, 2018, the parties had already engaged in extensive discovery practice, including hearings before this Court on motions to compel.  *See* DEs [15]-[36].  Emerson has thus failed to show that the inclusion of these affirmative defenses is prejudicial.  *See White v. Fein, Such & Crane, LLP*, No. 15-cv-438, 2018 WL 955903, at *3 (W.D.N.Y. Feb. 20, 2018) (finding no prejudice and denying motion to strike affirmative defense where motion to strike was made subsequent to discovery, which had provided plaintiffs with notice of facts underlying affirmative defense).  Moreover, the fact that Holmes asserted these affirmative defenses in his Answer in the early stages of litigation weighs against striking the defenses, regardless of any prejudice to Plaintiff.  *See GEOMC*, 918 F.3d at 98 ("A factually sufficient and legally valid defense should always be allowed if timely filed even if it will prejudice the plaintiff by expanding the scope of the litigation.").

Accordingly, because Emerson has failed to demonstrate that there are no questions of law which might allow Holmes's affirmative defenses to succeed and that Plaintiff would be prejudiced by the inclusion of these defenses, the Court respectfully recommends that Emerson's motion to strike the affirmative defenses of equitable estoppel and unclean hands be denied.

### B. **Motion for Summary Judgment against Holmes**

Next, Plaintiff seeks summary judgment against Holmes on its claims for fraudulent conveyance under DCL §§ 273-a, 276, 273 and 274. Emerson alleges that from 2008 through 2011, while AMA was a defendant in the underlying litigations that resulted in the unpaid Judgments, AMA made $2,438.013.00 in conveyances to Holmes and directed AMA to convey to him its ownership of CSI after AMA's $6,000,000.00 purchase. Plaintiff's Memorandum of Law in Support of its Motion for Summary Judgment ("Plaintiff SJ Mem."), DE [58], 2, 9. According to Plaintiff, these conveyances were made without fair consideration and with the intent to defraud Emerson by depleting AMA of its assets so that it could not satisfy the unpaid Judgments. *See id.* at 12-16. Emerson further seeks summary judgment on its claim to pierce AMA's corporate veil to hold Holmes personally liable for AMA's debts to Plaintiff.

In reviewing Emerson's motion for summary judgment, this court relies only on those facts alleged by Plaintiff that have not been disputed. In all other respects, the Court takes Holmes's allegations as true and gives Holmes the benefit of the doubt when his assertions conflict with those of Emerson. *See In re Corcoran*, 246

B.R. 152, 156 (E.D.N.Y. 2000) (citing *Samuels v. Mockry*, 77 F.3d 34, 36 (2d Cir. 1996)).

    *i.*    *Fraudulent Conveyance*

        1.   <u>DCL § 273-a</u>

To state a claim under DCL § 273-a, a plaintiff must show that: (1) a conveyance was made without "fair consideration," (2) by a person who is a defendant in an action for money damages or a judgment in such an action has been docketed against her and (3) the defendant has failed to satisfy the judgment. N.Y. Debt. & Cred. Law § 273-a; *Mitchell v. Garrison Protective Servs., Inc.*, 579 F. App'x 18, 21 (2d Cir. 2014) (citation omitted). Proving the conveyer's intent is not a necessary element of § 273-a. *Allstate Ins. Co. v. Mirvis*, No. 08-cv-4405, 2018 WL 4921631, at *6 (E.D.N.Y. Sept. 4, 2018) (citation omitted). A conveyance is made with "fair consideration" when it is made with "good faith" and payment is of a "fair equivalent value" for the interest conveyed. *Gortat v. Capala Bros., Inc.*, No. 07-cv-3629, 2018 WL 6718680, at *5 (E.D.N.Y. Nov. 6, 2018) (citation omitted). The party challenging the conveyance bears the burden of proving the absence of fair consideration. *See id.* In determining whether a transaction is supported by fair consideration, courts use a case-by-case approach and do not require a "dollar-for dollar equivalence," meaning that even if the amount paid is less than the value of the transferred property, consideration may be fair provided that the amount paid is not "disproportionately small" when compared to the value of the transferred property. *See id.* Where "good faith" is lacking, however, a conveyance may be set aside even if there is a fair

exchange of value. *Allstate Ins. Co.*, 2018 WL 4921631, at *4. Good faith is lacking "if there is no honest belief in the propriety of the activities in question, or if there is knowledge of the fact that the activities in question will hinder, delay, or defraud others." *Id.*

Here, it is undisputed that AMA was a defendant in the underlying litigations that resulted in the unpaid Judgments and that the Judgments have not been satisfied. *See* Plaintiff 56.1(a) Statement ¶¶ 6, 36, 38; Holmes 56.1(a) Response ¶¶ 6, 36, 38. Moreover, there is no genuine dispute regarding fair consideration. While Holmes reiterates that the conveyances AMA made to Holmes were not fraudulent, he does not raise any facts to dispute Emerson's claim that these conveyances were not made for fair consideration. *See* Holmes SJ Mem., 9-14. In response to Emerson's Rule 56.1(a) Statement of Facts, Holmes characterizes at least a portion of the conveyances as "interest payments on shareholder loans made by Holmes to AMA." *See* Holmes 56.1(a) Response ¶ 107. However, under New York law, insider conveyances made "even as repayments of a preexisting debt, are deemed to lack fair consideration as a matter of law." *First Keystone Consultants, Inc. v. Schlesinger Elec. Contractors, Inc.*, 871 F. Supp. 2d 103, 118 (E.D.N.Y. 2012) (citation omitted); *Pashaian v. Eccelston Properties, Ltd.*, 88 F.3d 77, 86 (2d Cir. 1996) ("[P]referential payments of pre-existing obligations . . . to a debtor corporation's shareholders, officers, or directors are deemed not to be transfers for fair consideration.") (citations omitted). Further, with respect to the consideration for Holmes's purchase of CSI from AMA, Holmes's brief assertion that he "paid fair and justified consideration for

CSI" does not raise a genuine question of fact.  *See* Defendant Charles S. Holmes'
Counterstatement of Facts in Opposition to Plaintiff's Local Civil Rule 56.1(a)
Statement in Support of its Motion for Summary Judgment ("Holmes 56.1(a)
Counterstatement"), DE [60], ¶ 15.  Similarly, the closing documents reflecting
Holmes's payment to AMA of $50,000.00 for the CSI stocks, standing alone, are
insufficient to raise a genuine dispute regarding Emerson's showing that such
payment was not made in "good faith" and was not of a "fair equivalent value" for the
stocks conveyed.  *See* Declaration of Barry M. Kazan in Opposition to Plaintiff's
Motion for Summary Judgment ("Kazan Decl."), DE [61], Ex. 7, Closing Documents,
dated November 15, 2006.  Accordingly, there is no genuine material issue of fact as
to whether the conveyances from AMA to Holmes were fraudulent.

The parties dispute, however, the amount of the conveyances made.  Both
parties have submitted expert reports that present conflicting information.[3]
Conflicting expert opinions constitute evidence upon which "a reasonable jury could
return a verdict for the nonmoving party."  *Hamblin v. British Airways PLC*, No. 09-

---

[3] Plaintiff argues that Holmes's unverified expert report is inadmissible on summary judgment.  Plaintiff's Reply Memorandum of Law in Support of its Motion for Summary Judgment ("Plaintiff SJ Reply"), DE [63], 4 n.3.  While unsworn documents are generally inadmissible on motions for summary judgment, a party that does not timely object to such documents is deemed to have waived any objections to admissibility.  *See Capobianco v. City of New York*, 422 F.3d 47, 55 (2d Cir. 2005) (citing 10A Charles Alan Wright et al., *Federal Practice & Procedure* § 2722, at 384-85 (3d ed. 1998)).  Here, Plaintiff was in possession of Holmes's expert report for almost a year prior to filing its motion for summary judgment.  *See* Electronic Order, dated January 10, 2018 (setting February 23, 2018 deadline for the submission of rebuttal exert disclosures and reports).  Nonetheless, Emerson never objected to Holmes's expert report and indeed submitted it as an exhibit in support of its motion for summary judgment and relied on it for its Rule 56.1(a) Statement of Facts.  *See, e.g.*, Plaintiff 56.1(a) Statement ¶ 108.  Accordingly, Emerson has waived any objections to the admissibility of the report.  *See Capobianco*, 422 F.3d at 55 (finding that district court had abused its discretion by refusing to consider two unsworn reports relied upon by plaintiff in opposition to defendants' motion for summary judgment, where defendants had submitted the reports as exhibits to their motion and had not objected to the admissibility of the reports).

cv-3077, 2010 WL 11626906, at *5 (E.D.N.Y. Aug. 12, 2010) (citations omitted). When "dueling experts" have put forward opinions in contradiction with each other, summary judgment may not be appropriate as to the subject matter of those opinions. *Melvin v. Cnty. of Westchester*, No. 14-cv-2995, 2019 WL 1227903, at *14 (S.D.N.Y. Mar. 15, 2019) (citations omitted); *see also In re Joint E. & S. Dist. Asbestos Litig.*, 52 F.3d 1124, 1135 (2d Cir. 1995) ("Trial courts should not arrogate the jury's role in evaluating the evidence and the credibility of expert witnesses by simply choosing sides in the battle of the experts.") (internal quotation marks, alterations and citation omitted). According to Emerson's expert, Frank A. Lazzara, a "Managing Director in the Forensic and Litigation Consulting practice of FTI Consulting, Inc.," AMA conveyed $2,438,013.00 to Holmes from 2008 to 2011, when AMA was a defendant in the underlying litigations that resulted in the unpaid Judgments. *See* Lesser Decl., Ex. JJ, Expert Report of Frank A. Lazzara, ¶¶ 1, 12. However, Holmes's expert, James T. Ashe, an "expert in the area of financial analysis and economic damages," concludes that the alleged fraudulent conveyances "should be at most $284,691." *See* Lesser Decl., Ex. QQ, Rebuttal Expert Report of James T. Ashe, CPA, CFFA, 1, 17. These two vastly differing conclusions are due to the experts' conflicting understandings of AMA's business model and Holmes's business practices.

Thus, while Emerson has met its burden of demonstrating that there is no dispute of material fact as to Holmes's liability under DCL § 273-a, it has failed to meet its burden regarding the amount of the conveyances AMA made to Holmes. Accordingly, the Court respectfully recommends that Emerson's motion for summary

judgment as to Holmes's liability under DCL § 273-a be granted and a trial be scheduled to determine damages.

2. <u>DCL § 276</u>

The Court next turns to Emerson's fraudulent conveyance claim under DCL § 276. A conveyance made with "actual intent" to "hinder, delay, or defraud either present or future creditors" is deemed actually fraudulent under DCL § 276. *See* N.Y. Debt. & Cred. Law § 276. Because a debtor's "actual intent" to defraud its creditors is "rarely susceptible to direct proof," courts will consider "badges of fraud" to determine whether a conveyance was fraudulent. *Allstate Ins. Co.*, 2018 WL 4921631, at *5. These "badges of fraud," which give rise to an inference of fraudulent intent include: "(1) a close relationship between the parties to the transaction, (2) a secret and hasty transfer not in the usual course of business, (3) inadequacy of consideration, (4) the transferor's knowledge of the creditor's claim and his or her inability to pay it, (5) the use of dummies or fictitious parties, and (6) retention of control of the property by the transferor after the conveyance." *Id.* The presence of multiple badges of fraud will increase the strength of the inference of fraudulent intent. *Id.* Where there is a dispute over fraudulent intent, summary judgment is inappropriate. *See Aguirre v. Best Care Agency, Inc.*, 961 F. Supp. 2d 427, 451-52 (E.D.N.Y. 2013).

Here, there are questions of fact regarding Holmes's alleged intent to defraud Plaintiff. According to Emerson, Holmes's intent is established based on the "undisputed numerous badges of fraud arising from AMA's conveyances to its sole

insider, Holmes, including: "(i) a close relationship between the parties to the transaction; (ii) a transfer outside the usual course of business; (iii) inadequacy of consideration; (iv) the transferor's knowledge of the creditor's (Emerson's) claims and AMA's inability to pay it; and (v) Holmes's retention of control of the AMA property conveyed to Holmes after the insider conveyances." *See* Plaintiff SJ Mem., 17. However, Plaintiff does not cite to a single statement of fact to support these "undisputed" badges of fraud. Further, Holmes's expert provides evidence to refute Emerson's allegations that any of Holmes's actions were motivated by an intent to defraud Plaintiff. *See* Lesser Decl., Ex. QQ, 10-13 (noting, *inter alia*, that after Emerson filed the lawsuit in April 2008, Holmes did not instruct AMA's administrator to change the manner in which he authorized transfers from AMA to his personal accounts, which evidences a lack of intent to defraud Emerson). Accordingly, the Court recommends that Plaintiff's motion for summary judgment as to the DCL § 276 claim be denied.

In reaching this conclusion, the Court has also considered Holmes's argument that a question of fact exists as to when Emerson discovered the alleged fraudulent conveyances, and therefore, whether the § 276 claim is barred by the applicable two-year statute of limitations.[4] *See* Holmes SJ Opp., 18-19. Plaintiff has provided

---

[4] "The limitation period for actual fraud is either six years from when the fraud took place (CPLR 213) or two years from the date of discovery (CPLR 203 [g])." *Avalon LLC v. Coronet Props. Co.*, 306 A.D.2d 62, 63, 762 N.Y.S.2d 48 (2003).

evidence that it first discovered AMA's conveyances in October 2014, less than two years before it commenced this lawsuit in March 2016.  *See* Plaintiff SJ Reply, 6. Holmes, however, has not provided specific facts showing that there is a genuine issue regarding when Emerson discovered AMA's conveyances.  Accordingly, the Court rejects Holmes's statute of limitations argument.  Nevertheless, because Plaintiff has failed to show that there is no genuine dispute as to Holmes's fraudulent intent, for the reasons above, the Court respectfully recommends that Emerson's motion for summary judgment as to its DCL § 276 claim be denied.

### 3.  DCL §§ 273 and 274

Plaintiff raises for the first time in its motion for summary judgment two new claims under DCL §§ 273 and 274 that it did not previously plead.  A fraudulent conveyance claim under § 273 is found when a transfer is made without "fair consideration," and the debtor is "rendered insolvent" by the transfer.  N.Y. Debt. & Cred. Law § 273.  Under DCL § 274, a conveyance is fraudulent if it is made without "fair consideration," and the debtor is left with "unreasonably small capital" for a pending or imminent business transaction.  N.Y. Debt. & Cred. Law § 274.

As an initial matter, the Court must determine whether Emerson's complaint may be amended at the summary judgment stage to include these two newly asserted claims.  A motion to amend the pleadings to conform to the evidence may be made at any time, even on summary judgment.  *See* Fed. R. Civ. P. 15(b)(2).  The proper procedure to assert a new claim at the summary judgment stage is to amend the complaint in accordance with Fed. R. Civ. P. 15(a).  *Barrios v. Enhanced Recovery Co.,*

24

*LLC*, No. 15-cv-5291, 2018 WL 5928105, at *4 (E.D.N.Y. Nov. 13, 2018) (citations omitted).  It is well settled, however, that a party may not amend its pleadings in its summary judgment briefing papers, which is what Plaintiff attempts to do here, *see* Plaintiff SJ Mem., 16 n.3.  *See Avillan v. Donahoe,* 483 Fed. App'x. 637, 639 (2d Cir. 2012) (citing *Wright v. Ernst & Young LLP*, 152 F.3d 169, 178 (2d Cir. 1998)); *Klein v. Frenkel*, No. 14-cv-2719, 2015 WL 13721693, at *4 (E.D.N.Y. Feb. 19, 2015). Accordingly, the Court will not consider these claims in deciding Emerson's motion for summary judgment and recommends that any such motion as to these claims at this juncture be denied.

However, courts have treated an issue presented for the first time on a motion for summary judgment as a request to amend the complaint.  *See Klein*, 2015 WL 13721693, at *5 (citing *Aetna Cas. & Sur. Co. v. Aniero Concrete Co., Inc.*, 404 F.3d 566, 603-04 (2d Cir. 2005)).  Pursuant to Fed. R. Civ. P. 15(a), a court "should freely give leave [to amend] when justice so requires."  Fed. R. Civ. P. 15(a)(2).  A Rule 15 motion "should be denied only for such reasons as undue delay, bad faith, futility of the amendment, and perhaps most important, the resulting prejudice to the opposing party."  *Klein*, 2015 WL 13721693, at *5 (citation omitted).  Here, the Court does not find, nor has Holmes identified, any prejudice that would result from granting leave to Plaintiff to amend the complaint to add claims for fraudulent conveyance under DCL §§ 273 and 274, especially where the facts underling these new claims are the same as those upon which Emerson's DCL §§ 273-a and 276 claims are based.  Accordingly, the Court respectfully recommends that Plaintiff be granted leave to

amend its complaint to add claims for fraudulent conveyance under DCL §§ 273 and 274, upon 30 days of the Court's entry of a final order on Emerson's motion.

## ii.   *Piercing the Corporate Veil*

Plaintiff further seeks summary judgment on its claim to pierce AMA's corporate veil and hold Holmes liable for both Judgments. As an initial matter, the court notes that piercing the corporate veil does not constitute an independent cause of action under New York law,[5] "but rather is a means of imposing liability on an underlying cause of action." *British Marine PLC v. Aavanti Shipping & Chartering Ltd.*, No. 13-cv-839, 2014 WL 2475485, at *2 (E.D.N.Y. June 3, 2014) (internal quotation marks and citation omitted). A "corporation exists independently of its owners, as a separate legal entity." *KCG Americas LLC v. Brazilmed, LLC*, No. 15-cv-4600, 2016 WL 900396, at *4 (S.D.N.Y. Feb. 26, 2016). However, under certain circumstances courts will "pierce the corporate veil" to impose liability for corporate obligations on the corporation's owners. *Id.*; *Rochester Gas & Elec. Corp. v. GPU, Inc.*, 355 F. App'x 547, 550 (2d Cir. 2009) (noting that courts will pierce the corporate veil "whenever necessary to prevent fraud or achieve equity") (internal quotation marks and citation omitted).

A party seeking to pierce the corporate veil must show that: "(1) the alleged alter ego exercised complete domination over the corporation with respect to the

---

[5] Because AMA is incorporated in New York, New York law applies to determine whether to pierce the corporate veil. *Johnson & Johnson Consumer Cos., Inc. v. Aini*, No. 02-cv-6624, 2009 WL 6055841, at *7 (E.D.N.Y. Dec. 1, 2009), *report and recommendation adopted*, No. 02-cv-6624, 2010 WL 986550 (E.D.N.Y. Mar. 17, 2010) ("Under New York choice-of-law principles, the law of the state of incorporation determines" whether to pierce the corporate veil) (citation omitted).

transaction at issue; and (2) such domination was used to commit a fraud or wrong that injured the party seeking to pierce the corporate veil." *First Keystone*, 871 F. Supp. 2d at 124. To determine whether the first requirement—domination—has been met, courts consider ten factors:

> (1) the absence of the formalities and paraphernalia that are part and parcel of the corporate existence, *i.e.*, issuance of stock, election of directors, keeping of corporate records and the like, (2) inadequate capitalization, (3) whether funds are put in and taken out of the corporation for personal rather than corporate purposes, (4) overlap in ownership, officers, directors, and personnel, (5) common office space, address and telephone numbers of corporate entities, (6) the amount of business discretion displayed by the allegedly dominated corporation, (7) whether the related corporations deal with the dominated corporation at arm['s] length, (8) whether the corporations are treated as independent profit centers, (9) the payment or guarantee of debts of the dominated corporation by other corporations in the group, and (10) whether the corporation in question had property that was used by other of the corporations as if it were its own.

*Sentry Ins. v. Brand Mgmt. Inc.*, 120 F. Supp. 3d 277, 286 (E.D.N.Y. 2015), *aff'd sub nom. Sentry Ins. a Mut. Co. v. Weber*, 720 F. App'x 639 (2d Cir. 2017) (quoting *Wm. Passalacqua Builders, Inc. v. Resnick Developers S., Inc.*, 933 F.2d 131, 139 (2d Cir. 1991)). No single factor is determinative in deciding whether complete control exists. *Broadridge Sec. Processing Solutions., LLC v. Khashoggi*, 507 F. App'x 57, 57-58 (2d Cir. 2013); *see also In re Stage Presence, Inc.,* 592 B.R. 292, 303 (Bankr. S.D.N.Y. 2018), *aff'd*, No. 12-10525, 2019 WL 2004030 (S.D.N.Y. May 7, 2019) (noting that these factors "cannot be applied in a vacuum, and the court must conduct a broad-based inquiry into the totality of the facts" to determine if domination has been established). With respect to the second factor—whether the domination was used to commit a wrong that injured the party seeking to pierce the veil—the party seeking

to pierce the veil must establish a nexus between the domination and the wrong suffered. *Johnson & Johnson*, 2009 WL 6055841, at *7.

1. Complete Domination

Here, it is undisputed that Holmes is the one-hundred percent owner of AMA. *See Emerson Elec. Co.*, 2012 WL 976051, at *4 ("[AMA] is 100%-owned and controlled by one person:  Charles S. Holmes . . . Following the closing, Holmes also owned and controlled CSI in its entirety.") (citations omitted); Lesser Decl., Ex. QQ, 8.  It is also undisputed that AMA's corporate address was the same as Holmes's personal residence during the litigations that resulted in the unpaid Judgments.  *See* Lesser Decl., Ex. C, NYS Department of State Division of Corporations Entity Information; *see also* Holmes SJ Opp., 22.  However, these two factors, alone, are insufficient to establish that an owner is the corporation's alter ego.  *See Cardell Fin. Corp. v. Suchodolski Assocs., Inc.*, No. 09-cv-6148, 2012 WL 12932049, at *24 (S.D.N.Y. July 17, 2012), *report and recommendation adopted sub nom.*, 896 F. Supp. 2d 320 (S.D.N.Y. 2012) ("It is clear that simple ownership does not warrant a finding of alter ego."); *Kalin v. Xanboo, Inc*, 526 F. Supp. 2d 392, 403-04 (S.D.N.Y. 2007) (finding that allegations of a common address, common ownership and common principals, without more, were  insufficient to pierce the corporate veil).

Emerson's expert, Lazarra, submits four additional facts in support of Plaintiff's argument that Holmes exercised complete domination over AMA—(i) inadequate capitalization of AMA following the commencement of the underlying litigations that resulted in the Judgments, *see* Lesser Decl., Ex. JJ, ¶ 52; (ii) the flow

of funds through AMA for Holmes's personal rather than AMA's corporate purposes, *id.* at ¶ 53; (iii) a lack of arm's length dealing between AMA and Holmes's affiliated entities, Wilcom and Churchill, *id.* at ¶¶ 55-56; and (iv) payment of AMA's legal fees by CSI, *id.* at ¶ 58. Ashe, Holmes's expert, disputes Lazarra's understanding of AMA's business model and the relationship between Holmes and AMA, thereby raising questions of fact as to Lazarra's claims to establish Holmes's complete domination over AMA. Notably, Ashe provides evidence that: (i) AMA was not undercapitalized, because it was not an operating company that required capitalization, but was instead "in essence a holding company" that had "no real need for working capital except on an as needed basis," *see* Lesser Decl., Ex. QQ, 8, 14; (ii) Holmes had reimbursement procedures in place for personal expenses incurred on AMA's American Express card, *id.* at 4-5, 15; (iii) AMA's arrangements with Holmes's affiliated entities were typical of transactions entered into by related parties and there is no indication that they were not entered into at arm's length, *id.* at 13; and (iv) AMA's legal fees paid by CSI had been properly recorded on AMA's books, and the IRS had concluded, upon examining AMA's 2010 tax return, that these legal expenses were "ordinary and necessary expenses," *id.* at 14. Accordingly, material questions of fact preclude a finding on summary judgment that Holmes exercised complete domination of AMA.

## 2. Use of Domination to Commit a Wrong

The parties further dispute whether Holmes used AMA to commit a wrong against Emerson. Plaintiff argues that: (1) "Holmes used his complete domination

29

and control over AMA to convey all of AMA's assets and cash to himself, thereby rendering AMA judgment-proof"; and (2) "deliberately refused to direct CSI to fund the Judgments pursuant to its obligations under the Assignment and Assumption Agreement" that governed AMA's conveyance of CSI to Holmes.  Plaintiff SJ Mem., 22-23.  The diversion of funds to make a corporation judgment-proof constitutes a wrong for veil piercing purposes.  *See First Keystone*, 871 F. Supp. 2d at 127. However, questions of fact exist as to whether the conveyances—the amount of which, as discussed with respect to Plaintiff's DCL § 273-a claim, is in dispute—were made for the improper purpose of rendering AMA judgment-proof.   Holmes's expert presented evidence that AMA "historically had little assets," and therefore Holmes could not have stripped its assets to make it insolvent.  *See* Lesser Decl., Ex. QQ, 3. Moreover, the parties dispute whether CSI was obligated to fund the Judgments under the Assignment and Assumption Agreement.  *See* Holmes 56.1(a) Response ¶¶ 54-55; Plaintiff SJ Reply, 8; *see also* Lesser Decl., Ex. HHH, Assignment and Assumption Agreement, dated November 8, 2006, Schedule 1.A, Assumed Liabilities (legal obligations not listed).

Because questions of fact exist regarding Holmes's domination over AMA and whether any such domination was used to commit a wrong against Emerson, the Court respectfully recommends that Plaintiff's motion for summary judgment to pierce AMA's corporate veil be denied.

C. **Default Judgment against AMA**

Finally, Emerson seeks entry of a default judgment pursuant to Fed. R. Civ. P. 55 against AMA on its claims against AMA for fraudulent conveyance under DCL §§ 273-a and 276.  *See* Plaintiff SJ Memo, 11.  By virtue of AMA's default, the well-pleaded allegations against AMA in the Complaint are deemed admitted, except as to the amount of Plaintiff's damages.  *Allstate Ins. Co. v. Howell*, No. 09-cv-4660, 2013 WL 5447152, at *2 (E.D.N.Y. Sept. 30, 2013) (quoting *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992)).

Both of Emerson's fraudulent conveyance claims under DCL §§ 273-a and 276 against AMA are based upon allegations that AMA conveyed cash and assets to Holmes's personal accounts.  *See* Compl. ¶¶ 104, 107, 111-12, 120, 128-32.  Under New York law, fraudulent conveyance claims must be brought against those "who participate in the fraudulent transfer of a debtor's property and are transferees of the assets and beneficiaries of the conveyance." *Stochastic Decisions, Inc. v. DiDomenico*, 995 F.2d 1158, 1172 (2d Cir. 1993).  As such, "the transferor of the party—that is, the debtor—is not the proper defendant in a fraudulent conveyance claim." *CAMOFI Master LDC v. Riptide Worldwide, Inc.*, No. 10-cv-4020, 2012 WL 6766767, at *12 (S.D.N.Y. Dec. 17, 2012).  Further, a claim may not be brought against a party who does not benefit from the transfer.  *Id.* (denying default judgment for fraudulent conveyance claim against debtor corporation that had conveyed bonuses and salary increases to defendant corporate executives); *see also DoubleLine Capital LP v. Odebrecht Fin., Ltd.*, 323 F. Supp. 3d 393, 465 (S.D.N.Y. 2018) (dismissing fraudulent

conveyance claim where plaintiff did not allege any benefit defendant had received from conveyances); *Fed. Nat. Mortg. Ass'n v. Olympia Mortg. Corp.*, No. 04-cv-4971, 2011 WL 9933496, at *11 (E.D.N.Y. Aug. 5, 2011) ("Courts applying *Stochastic* have repeatedly noted that one need . . . be a transferee or beneficiary to be a participant in a fraudulent transfer . . .").

Here, the Complaint does not allege that AMA is either the transferee or a beneficiary of the alleged fraudulent conveyance.  Accordingly, AMA is not the proper defendant for claims under DCL §§ 273-a and 276.  The Court therefore respectfully recommends that Plaintiff's motion for default judgment against AMA be denied.

## IV. CONCLUSION

For the reasons set forth above, the Court respectfully recommends that Emerson's motions be granted in part and denied in part.  Specifically, the Court recommends that:  (i) Plaintiff's motion to strike Holmes's equitable estoppel and unclean hands affirmative defenses be denied;  (ii) Emerson's motion for summary judgment against Holmes for fraudulent conveyance under DCL § 273-a be granted as to liability and a trial be scheduled to determine damages; (iii) Plaintiff's motion for summary judgment against Holmes for fraudulent conveyance under DCL § 276 and to pierce AMA's corporate veil to hold Holmes liable for AMA's liabilities be denied; and (iv) Emerson's motion for default judgment against AMA be denied.  The Court further respectfully recommends that Plaintiff be granted leave to amend its complaint to include claims under DCL §§ 273 and 274, upon 30 days of the Court's entry of a final order on this motion.

**V. OBJECTIONS**

A copy of this Report and Recommendation is being served on Plaintiff by electronic filing on the date below.  Plaintiff is directed to serve a copy of it on each Defendant via first-class mail and promptly file proof of service by ECF.  Any objections to this Report and Recommendation must be filed with the Clerk of the Court within fourteen days.  *See* 28 U.S.C. §636 (b)(1); Fed. R. Civ. P. 72; Fed. R. Civ. P. 6(a) and 6(d).  Failure to file objections within the specified period waives the right to appeal the District Court's order.  *See Ferrer v. Woliver*, No. 05-3696, 2008 WL 4951035, at *2 (2d Cir. Nov. 20, 2008); *Beverly v. Walker*, 118 F.3d 900, 902 (2d Cir. 1997); *Savoie v. Merchants Bank*, 84 F.3d 52, 60 (2d Cir. 1996).


Dated:      Central Islip, New York
            June 14, 2019

                              s/ Steven I. Locke
                              STEVEN I. LOCKE
                              United States Magistrate Judge