UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

EMERSON ELECTRIC CO.,

Plaintiff,

-against-

CHARLES S. HOLMES and ASSET MANAGEMENT
ASSOCIATES OF NEW YORK, INC.,

Defendants.

16 Civ. 1390 (PKC)(SIL)

## PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF ITS
## MOTION FOR LEAVE TO FILE PROPOSED AMENDED COMPLAINT

SIMON•LESSER PC
355 Lexington Avenue, 10th Floor
New York, New York 10017
212.599.5455

*Attorneys for Defendant*
*Emerson Electric Co.*

## **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ...................................................................................1

FACTUAL AND PROCEDURAL BACKGROUND ..................................................2

ARGUMENT................................................................................................................9

   I.   Standards Applicable to Granting Leave to Amend ........................................9

   II.   Emerson Meets the Applicable Standards for Granting Leave to Amend ....................10

      A.   Emerson Presented The Additional Facts In Its Summary Judgment Motion ...........10

      B.   Holmes Cannot Show That He Will Suffer Prejudice.................................12

      C.   Emerson Has Proceeded in Good Faith.......................................................13

      D.   Emerson's Proposed Amendment Is Not Futile .........................................14

CONCLUSION...........................................................................................................22

## **TABLE OF AUTHORITIES**

**Federal Cases**                                                                                                   **Page(s)**

*Acito v. IMCERA Grp.*,
  47 F.3d 47 (2d Cir. 1995) ...................................................................................... 10

*AEP Energy Servs. Gas Holding Co. v. Bank of Am., N.A.*,
  626 F.3d 699 (2d Cir. 2010) .................................................................................. 10

*Am. Elec. Power Co. v. Westinghouse Elec. Corp.*,
  418 F. Supp. 435 (S.D.N.Y. 1976) ....................................................................... 11

*Asset Mgmt. Assocs. v. Emerson Telcom. Prods. L.L.C.*,
  No. 08-CV-2506 (TCP) (ARL), 2011 U.S. Dist. LEXIS 9434
  (E.D.N.Y. Jan. 25, 2011) ........................................................................................ 3

*Atateks Foreign Trade, Ltd. v. Private Label Sourcing, L.L.C.*,
  402 F. App'x 623 (2d Cir. 2010) ..................................................................... 19-20

*Block v. First Blood Assocs.*,
  988 F.2d 344 (2d Cir. 1993) .................................................................................. 10

*Clomon v. Jackson*,
  988 F.2d 1314 (2d Cir. 1993) ..................................................................... 9, 12, 14

*Dafeng Hengwei Textile Co. v. Aceco Indus. & Commer. Corp.* ,
  No. 13-CV-5829 (PK), 2017 U.S. Dist. LEXIS 49041
  (E.D.N.Y. Mar. 30, 2017) ........................................................................................ 4

*Daniels v. Loizzo*,
  174 F.R.D. 295 (S.D.N.Y. 1997) ........................................................................... 11

*Emerson Elec. Co. v. Asset Mgmt. Assocs. of N.Y.*,
  No. 08-CV-1489 (DRH)(AYS), 2015 U.S. Dist. LEXIS 98401
  (E.D.N.Y. July 28, 2015) ......................................................................................... 3

*Expoconsul Int'l, Inc. v. A/E Sys., Inc.*,
  145 F.R.D. 336 (S.D.N.Y. 1993) ........................................................................... 11

*Fariello v. Campbell*,
  860 F. Supp. 54 (E.D.N.Y. 1994) .......................................................................... 10

*Foman v. Davis*,
  371 U.S. 178 (1962) ......................................................................................... 9, 15

*Friedl v. City of N.Y.*,
  210 F.3d 79 (2d Cir. 2000) .................................................................................... 11

*Haddock v. Nationwide Fin. Servs.*,
    514 F. Supp. 2d 267 (D. Conn. 2007) ................................................................ 13

*Klein v. Frenkel*,
    No. 14-cv-2719 (ADS) (ARL), 2015 U.S. Dist. LEXIS 194111
    (E.D.N.Y. Feb. 19, 2015) ................................................................................... 12

*Kreppein v. Celotex Corp.*,
    969 F.2d 1424 (2d Cir. 1992) .......................................................................... 12-13

*Lucente v. IBM*,
    310 F.3d 243 (2d Cir. 2002) ............................................................................... 14

*M.E.S., Inc. v. Safeco Ins. Co. of Am.*,
    No. 10-CV-02798 (PKC) (VMS), 2014 U.S. Dist. LEXIS 88107
    (E.D.N.Y. June 27, 2014) ................................................................................... 13

*Marketplace LaGuardia Ltd. P'shp v. Harkey Enters.*,
    No. 07-CV-1003 (CBA), 2008 U.S. Dist. LEXIS 25479
    (E.D.N.Y. Mar. 31, 2008) .................................................................................. 20

*Miller v. Selsky*,
    234 F.3d 1262, 2000 U.S. App. LEXIS 29697
    (2d Cir. Nov. 21, 2000) ..................................................................................... 11

*Neri v. Coughlin*,
    No. 92 CIV. 7890 (SS), 1993 U.S. Dist. LEXIS 15892
    (S.D.N.Y. Oct. 27, 1993) ................................................................................... 12

*Ouedraogo v. A-1 Int'l Courier Serv.*,
    No. 12 Civ. 5651 (AJN), 2013 U.S. Dist. LEXIS 96091
    S.D.N.Y. July 8, 2013) ...................................................................................... 15

*Picard v. Estate of Mendelow  (In re Bernard L. Madoff Invs. Secs. L.L.C.)*,
    560 B.R. 208 (Bankr. S.D.N.Y. 2016) ............................................................... 12

*Reiter's Beer Distribs., Inc. v. Christian Schmidt Brewing Co.*,
    657 F. Supp. 136 (E.D.N.Y. 1987) .................................................................... 10

*Ryder Energy Distrib. Corp. v. Merrill Lynch Commodities, Inc.*,
    748 F.2d 774 (2d Cir. 1984) ............................................................................... 14

*Staskowski v. County of Nassau*,
    No. 05-CV-5984 (SJF)(WDW), 2007 U.S. Dist. LEXIS 86319
    (E.D.N.Y. Nov. 21, 2007) .................................................................................. 15

*Stier v. United States*,
    871 F. Supp. 127 (N.D.N.Y. 1994) .................................................................... 20

*Todd v. Exxon Corp.*,
   275 F.3d 191 (2d Cir. 2001) ................................................................ 14

*William Wrigley Jr. Co. v. Waters*,
   890 F.2d 594 (2d Cir. 1989) ................................................................ 16

*WIXT Television, Inc. v. Meredith Corp.*,
   506 F. Supp. 1003 (N.D.N.Y. 1980) .................................................... 13

*Wm. Passalacqua Builders v. Resnick Developers S.*,
   933 F.2d 131 (2d Cir. 1991) ................................................................ 16

**State Cases**

*Americore Drilling & Cutting, Inc. v. EMB Contr. Corp.*,
   55 Misc. 3d 1207(A), 2017 N.Y. Misc. LEXIS 1180
   (N.Y. Sup. Ct. Apr. 3, 2017) ................................................................ 18

*Cortlandt St. Recovery Corp. v. Bonderman*,
   31 N.Y.3d 30, 96 N.E.3d 191 (2018) ................................................... 15

*Morris v. State Dep't of Taxation & Fin.*,
   82 N.Y.2d 135, 623 N.E.2d 1157 (1993) ....................................... 15, 16

*Pae v. Chul Yoon*,
   41 A.D.3d 681, 838 N.Y.S.2d 172 (2d Dep't 2007) ............................ 19

*TNS Holdings Inc. v. MKI Sec. Corp.*,
   92 N.Y.2d 335, 680 N.Y.S.2d 891 (1998) ........................................... 19

**State Statutes**

N.Y. C.P.L.R. 4.5 ...................................................................................... 4

N.Y. C.P.L.R. 273-a .................................................................................. 19

N.Y. C.P.L.R. 5225 .................................................................................... 3

**Rules**

Fed. R. Civ. P. 12 ..................................................................................... 14

Fed. R. Civ. P. 15 ............................................................................. *passim*

Fed. R. Civ. P. 56 ................................................................................. 8, 13

Fed. R. Civ. P. 69 ....................................................................................... 3

## PRELIMINARY STATEMENT

Plaintiff Emerson Electric Co. ("Emerson") submits this Memorandum of Law in support of its motion for leave to file its proposed Amended Complaint.[1]

The underlying related actions that resulted in the unpaid Final Judgments at issue in this judgment enforcement proceeding began in 2008, over eleven (11) years ago.  The Final Judgments entered against defendant Asset Management Associates of New York, Inc. ("AMA") after it lost on the merits before Judges Platt and Wexler in the underlying related actions amount to approximately $4 million, not including post-judgment interest.  Following discovery in this Judgment enforcement proceeding, Emerson moved for summary judgment as the undisputed facts established that (i) AMA fraudulently transferred millions of dollars to its sole insider, defendant Charles S. Holmes ("Holmes"), during the underlying litigations, and (ii) Holmes exercised complete dominion and control over AMA to commit wrongs against Emerson sufficient to pierce the corporate veil of AMA and hold Holmes liable for the unpaid Judgments as the alter ego of AMA.  On June 14, 2019, Hon. Steven I. Locke, U.S.M.J. issued his Report and Recommendation (ECF Doc. 65)("R&R") recommending that summary judgment be granted on liability on Emerson's DCL § 273-a claim, but otherwise denied based on what he deemed a "dueling expert report" submitted by Holmes.  The parties both filed Objections and Replies to the R&R (ECF Docs. 69-72) which are under consideration by the Court.

Emerson's summary judgment motion addresses the undisputed facts disclosed by Holmes during discovery that support its First Cause of Action to pierce the corporate veil of

---

[1]      Citations to "Amended Complaint ¶ ___" are to the proposed Amended Complaint, which is attached to the accompanying Affirmation of Leonard F. Lesser ("Lesser Aff.") as Exhibit A.  For the Court's convenience, a redline comparing the proposed Amended Complaint to the Complaint (without its exhibits, which are unchanged in the proposed Amended Complaint) is attached to the Lesser Aff. as Exhibit B.

AMA and attach alter-ego liability on the unpaid Judgments to Holmes, including AMA's

conveyance to Holmes of its ownership of CSI Technologies, Inc. ("CSI"), the company AMA

purchased from Emerson Telecommunications Products LLC ("ETP") in the transaction that was

at issue in the underlying litigations.  With the Court's permission, by this motion, Emerson

seeks leave to file its proposed Amended Complaint to conform its pleading to the undisputed

facts revealed in discovery and delineated in its Rule 56.1(a) Statement (ECF Doc. 56).  The

proposed amendments do not seek to add any new claims, but simply supplement Emerson's

First Cause of Action for alter-ego liability with the facts uncovered in discovery, which were

already delineated in Emerson's summary judgment motion and fully briefed by the parties.  As

the parties have already fully addressed the proposed additional facts in their summary judgment

papers, and there has otherwise not been any delay, undue prejudice, bad faith or futility, leave to

file the proposed Amended Complaint should be granted.

## FACTUAL AND PROCEDURAL BACKGROUND

Emerson is the judgment-creditor of AMA in the Final Judgment entered by this Court on

August 13, 2015, for $1,966,246.35 ("8/13/15 Judgment") in the underlying action, *Emerson Elec.

Co. v. Asset Mgmt. Assocs. of N.Y.*, 08-cv-1489 (E.D.N.Y.). (R&R, 5); (ECF No. 4).   Emerson is

also the assignee and judgment-creditor of AMA in the separate Final Judgment entered against

AMA on January 9, 2014, for $1,965,081.40 ("1/9/14 Judgment") for Emerson

Telecommunication Products, LLC ("ETP") in the related action, *Asset Mgmt. Assocs. of N.Y. v.

Emerson Telecom. Prods. LLC*, 08-cv-2128 (E.D.N.Y.). (R&R, 4); (08-cv-2128 ECF No. 52).

The 08-cv-2128 Judgment followed Judge Thomas C. Platt's confirmation of the

Arbitration Award awarding ETP a $1.02 million purchase price adjustment against AMA, and

rejecting AMA's claims against ETP in the arbitration of their post-closing claims arising from

AMA's November 8, 2006 purchase of CSI from ETP for $6 million. (56.1(b) St. ¶¶ 35-36);[2]
*see Asset Mgmt. Assocs. v. Emerson Elec. Co.*, 08-cv-02506, 2011 U.S. Dist. LEXIS 9434
(E.D.N.Y. Jan. 25, 2011).

The 08-cv-1489 Judgment followed Judge Leonard D. Wexler's determination after a
bench trial on Emerson's claim for amounts owed for AMA's use of an Emerson facility in
Mexico under the parties' Transition Services Agreement that was entered into in connection
with AMA's purchase of CSI. (56.1(b) St. ¶¶ 8, 9); *see Emerson Elec. Co. v. Asset Mgmt.
Assocs. of N.Y.*, 08-cv-1489, 2015 U.S. Dist. LEXIS 98401 (E.D.N.Y. July 28, 2015).

In this supplemental proceeding, Emerson seeks judgment enforcement relief under Fed.
R. Civ. P. 69 and CPLR § 5225(b) to avoid conveyances made from AMA to its sole owner and
insider, Holmes, and to pierce the corporate veil of AMA and obtain a judgment against Holmes
for the unpaid Judgments. The fraudulent conveyance claims concern millions of dollars in
undisputed insider transfers to Holmes from AMA during the years of the underlying litigations
that resulted in the unpaid Judgments. (56.1(b) St. ¶ 177)("Holmes authorized, and does not
dispute receiving, these $2,438,013 in conveyances from AMA during the time AMA was a
defendant in the underlying litigations that resulted in the unpaid Judgments.").

Emerson's veil-piercing claim is based on Holmes' previously determined complete
dominion and control over AMA, and his use of that dominion and control to breach its
contractual obligations and corresponding duties of good faith to fund the Judgments and to
otherwise divert all of AMA's assets and cash to himself rendering AMA judgment-proof.
Holmes' wrongful conduct includes his systematic conveyances of all of AMA's assets and cash
during the litigations to himself, and his deliberate refusal to fund AMA's obligations on the

---

[2]     References (56.1(b) St. ¶ __)" are to the facts acknowledged or otherwise not legitimately disputed
in Holmes' Local Civil Rule 56.1(b) Statement (ECF No. 64).

Judgments once AMA lost the litigations notwithstanding its contractual obligations to do so under § 4.5 of the Acquisition Agreement. *See, e.g., Dafeng Hengwei Textile Co. v. Aceco Indus.*, 13-cv-5829, 2017 U.S. Dist. LEXIS 49041 *24 (E.D.N.Y. Mar. 30, 2017)("Under New York law, the diversion of funds to make a corporation judgment-proof constitutes a wrong for the purposes of determining whether the corporate veil should be pierced.").

The evidence produced in discovery established additional wrongful conduct on the part of Holmes that support Emerson's alter ego claim against him.  Shortly after AMA's purchase of CSI from ETP for $6 million, AMA "sold the business to [Holmes]." (56.1(b) St. ¶ 51). The sole consideration for this insider transaction was $50,000 and Holmes' execution of an Assignment and Assumption Agreement, dated November 15, 2006, promising to have CSI fund AMA's liabilities and obligations related to the underlying transactions and litigations with Emerson and ETP. (56.1(b) St. ¶¶ 50–53); (ECF Dkt. No. 61-7, Kazan Decl. Ex. 7); (ECF Dkt. No. 57-27, November 15, 2006 Assignment and Assumption Agreement).

Holmes later directed AMA's attorneys to prepare a Reimbursement Agreement, dated March 5, 2007 under which AMA had CSI reconfirm its obligations pursuant to the November 15, 2006 Assignment and Assumption Agreement to fund AMA's expenses in the underlying litigations with Emerson. (56.1(b) St. ¶ 60); (ECF Dkt. No. 57-12, March 5, 2007 Reimbursement Agreement).  Holmes testified that the purpose of the Reimbursement Agreement was to confirm CSI's obligation to "pay everything[,] [w]hatever liabilities there were," in "connection with the litigation that has evolved from the Emerson Agreements and the transactions contemplated thereby," which the Reimbursement Agreement defines as the "Emerson Litigation." (56.1(b) St. ¶ 60).

4

Pursuant to the November 15, 2006 Assignment and Assumption Agreement and the corresponding Reimbursement Agreement, CSI funded all of AMA's legal and arbitration fees and expenses related to the litigations that resulted in the unpaid Judgments. (56.1(b) St. ¶¶ 63, 65); (ECF No. 57-31)(Invoices and Checks reflecting CSI's payment of the legal and arbitration fees and expenses in the underlying litigations).  However, following entry of the Final Judgments, Holmes, as sole owner and controller of both AMA and CSI, refused to honor the November 15, 2006 Assignment and Assumption Agreement and satisfy the Judgments as obligated, thereby nullifying any fair consideration for AMA's post-acquisition conveyance to him of CSI's stock. (56.1(b) St. ¶¶ 66–68). Without the consideration of the November 15, 2006 Assignment and Assumption Agreement, the sole purported consideration for AMA's conveyance of CSI's stock to Holmes was reduced to the $50,000 allegedly paid by Holmes. Standing alone, that insider conveyance of CSI's stock from AMA to Holmes for $50,000 was not for fair consideration as Magistrate Locke correctly determined. *See* ("R&R" at pg. 20)("[T]he closing documents reflecting Holmes' payment to AMA of $50,000 for the CSI stock, standing alone, are insufficient to raise a genuine dispute regarding Emerson's showing that such payment was not made in 'good faith' and was not a 'fair equivalent value' for the stocks conveyed.").

In addition to exercising his domination and control over AMA to harm Emerson by avoiding the only putative fair consideration for AMA's conveyance of CSI's stock to Holmes, the evidence produced in discovery also revealed that Holmes engaged in other wrongful conduct regarding that transaction.  Although both the November 15, 2006 Assignment and Assumption Agreement and the corresponding Reimbursement Agreement obligated CSI to fund AMA's obligations in connection with the underlying transactions with Emerson, including the

5

legal expenses AMA incurred in the underlying litigations, Sandford Kirschenbaum (AMA and

Holmes' accountant) testified that CSI treated those legal fee payments as a loan to Wilcom,

another one of Holmes' solely owned entities, on its tax returns, and recommended that AMA's

2010 tax return be amended to reclassify the legal fee payments as a "distribution to Holmes, and

it was deducted on AMA's return." (56.1(b) St. ¶¶ 125-127). The IRS then audited AMA's

amended 2010 tax return and the deductions AMA took for the fees paid by CSI in connection

with the underlying Emerson litigations that were reclassified as "distributions to Holmes."

(56.1(b) St. ¶ 128). Holmes designated Kirschenbaum as AMA's attorney-in-fact in connection

with that audit. (56.1(b) St. ¶ 129). During the audit, Kirschenbaum represented to the IRS that

it was AMA's obligation to fund the legal fees from the underlying Emerson litigations,

notwithstanding that CSI had paid those legal fees pursuant to the November 15, 2006

Assignment and Assumption Agreement and the corresponding Reimbursement Agreement.

(56.1(b) St. ¶ 130). The IRS accepted Kirschenbaum's representations in its audit findings and

permitted AMA to reclassify the legal fees paid by CSI as deductions on the AMA amended

return. (56.1(b) St. ¶ 131).

However, as established in discovery, the only reason that the IRS permitted the

reclassification and deductions on AMA's returns was because Holmes did not advise

Kirschenbaum of the existence of the November 15, 2006 Assignment and Assumption

Agreement, and the corresponding Reimbursement Agreement, which clearly reflected that it

was CSI's obligation to fund the AMA legal fees and expenses in connection with AMA's

conveyance of CSI to Holmes as it had consistently been doing since that conveyance. (56.1(b)

St. ¶ 132). It is also undisputed that the IRS was not informed about, or provided copies of, the

November 15, 2006 Assignment and Assumption Agreement and the corresponding

Reimbursement Agreement that both reflect that it was CSI's obligation to fund AMA's legal fees and expenses in connection with AMA's conveyance of CSI to Holmes.  (56.1(b) St. ¶ 132). As a result, the IRS approved AMA's amended 2010 tax return that permitted AMA to reclassify the legal fees paid by CSI as a "distribution to Holmes" and a "deduction on the tax return." (56.1(b) St. ¶ 132).  Even after Kirschenbaum was advised of the November 15, 2006 Assignment and Assumption Agreement and the corresponding Reimbursement Agreement, both of which reflect that it is CSI's obligation to fund AMA's legal fees and expenses related to AMA's conveyance of CSI to Holmes, the IRS was never informed about or provided copies of those agreements. (56.1(b) St. ¶¶ 134–35).

Following the close of discovery, Emerson moved for summary judgment on its fraudulent conveyances claims under DCL § 273-a and DCL § 276 and on its alter ego claim. The R&R recommended that Emerson's motion for summary judgment be granted on its DCL § 273-a fraudulent conveyance claim as to liability and a trial be scheduled to determine damages. The R&R also recommended that Emerson's motion for summary judgment on its veil-piercing and DCL § 276 intentional fraudulent conveyance claims be denied based on what the Court viewed as "dueling expert reports," and that Emerson's previously filed motion to strike Holmes' "unclean hands" and "equitable estoppel" defenses be denied.

Emerson's summary judgment motion addresses the undisputed facts disclosed by Holmes during discovery that support its First Cause of Action to pierce the corporate veil of AMA and attach alter-ego liability on the unpaid Judgments to Holmes, including AMA's conveyance to Holmes of its ownership of CSI in consideration for the November 15, 2006 Assignment and Assumption Agreement, and Holmes post-Judgment repudiation of that consideration.  With the Court's permission, by this motion, Emerson seeks leave to file its

proposed Amended Complaint to conform its Complaint to the undisputed facts revealed in

discovery regarding Holmes' conduct with respect to that which were fully delineated in its Rule

56.1(a) Statement.  The proposed amendments do not seek to add any new claims, but simply

supplement Emerson's First Cause of Action for alter-ego liability with the additional facts

uncovered in discovery that establish that Holmes used his domination and control of AMA in

connection with that transaction to commit a wrong against Emerson, AMA's Judgment creditor.

Holmes first produced the documents reflecting AMA's November 15, 2006 conveyance

of its ownership of CSI to Holms for $50,000 and the November 15, 2006 Assignment and

Assumption Agreement as part of his document production in this judgment enforcement

proceeding, on April 4, 2017. (56.1(b) St. ¶ 170).  Before that production, Emerson was unaware

of the November 15, 2006 Assignment Assumption Agreement and the $50,000 payment by

Holmes for AMA's ownership of CSI.

Emerson's Complaint filed on March 21, 2016 set forth the facts that it had been made

aware of by that time.  Those facts included the millions of dollars in undisputed insider transfers

to Holmes from AMA during the years of the underlying litigations that resulted in the unpaid

Judgments that formed the basis of Emerson's fraudulent conveyance claims. (56.1(b) St.

¶ 177)("Holmes authorized, and does not dispute receiving, these $2,438,013 in conveyances

from AMA during the time AMA was a defendant in the underlying litigations that resulted in

the unpaid Judgments.").  Emerson's March 21, 2016 Complaint also described the evidence it

had at that time to support its alter ego claim against Holmes.  Emerson included the additional

facts revealed in discovery in its summary judgment motion, which was fully briefed by the

parties.  The Court has the ability to deem the Complaint amended to conform to the facts

presented on the summary judgment motion. *See Clomon v. Jackson,* 988 F.2d 1314, 1323 (2d

Cir. 1993)("The undisputed facts as presented on the summary judgment motion served as a basis to deem the complaint amended to conform to with the proof pursuant to Fed. R. Civ. P. 15[b]).").

Nonetheless, with the Court's permission, Emerson respectfully seeks leave to file its proposed Amended Complaint to supplement the Complaint with the additional facts uncovered in discovery that support its First Cause of Action for alter-ego liability against Holmes that were included in the fully briefed summary judgment motion.  Leave to amend under Fed. R. Civ. P. 15(a) should be freely given when justice so requires, as it does here, where there is no delay, undue prejudice, bad faith or futility.  Indeed, Emerson's proposed Amended Complaint does not seek to add any new claims, but instead only seeks to supplement its original alter-ego claim with the facts uncovered in discovery.  As the parties have already fully addressed the proposed supplemental facts in their summary judgment papers, leave to file the proposed Amended Complaint to conform to the evidence delineated in Emerson's summary judgment motion should be granted.

## ARGUMENT

### I.   Standards Applicable to Granting Leave to Amend

Under Fed. R. Civ. P. 15(a)(2) of the Federal Rules of Civil Procedure, where a party cannot amend its pleading as a matter of course, leave to amend a pleading should "be freely given when justice so requires." *Foman v. Davis*, 371 U.S. 178, 182 (1962). "If the plaintiff has at least colorable grounds for relief, the amendment should be permitted unless the plaintiff has acted in bad faith or is guilty of undue delay, or if permission to amend would unduly prejudice the defendant." *Reiter's Beer Distribs., Inc. v. Christian Schmidt Brewing Co.*, 657 F. Supp. 136, 141 (E.D.N.Y. 1987). Ultimately, however, "the decision of whether to allow plaintiffs to amend

their Complaint is left to the sound discretion of the district court, [and] there must be good reason to deny the motion." *Acito v. IMCERA Grp.*, 47 F.3d 47, 55 (2d Cir. 1995).

Indeed, "[t]he rule in this Circuit has been to allow a party to amend its pleadings in the absence of a showing *by the nonmovant* of prejudice or bad faith." *AEP Energy Servs. Gas Holding Co. v. Bank of Am., N.A.*, 626 F.3d 699, 725 (2d Cir. 2010) (emphasis added) (quoting *Block v. First Blood Assocs.*, 988 F.2d 344, 350 (2d Cir. 1993)); *see also Fariello v. Campbell*, 860 F. Supp. 54, 70 (E.D.N.Y. 1994) ("The party opposing the motion for leave to amend has the burden of establishing that an amendment would be prejudicial."). "In determining what constitutes prejudice, [courts] consider whether the assertion of the new claim would . . . require the opponent to expend significant additional resources to conduct discovery and prepare for trial [or] significantly delay the resolution of the dispute . . .." *See Block*, 988 F.2d at 350.

Here, because the proposed Amended Complaint only seeks to supplement Emerson's already pleaded alter-ego claim to reference the additional evidence adduced in discovery and presented in its summary judgment motion, the motion to amend should be granted.

## II. Emerson Meets the Applicable Standards for Granting Leave to Amend

### A. Emerson Presented The Additional Facts In Its Summary Judgment Motion

"The function of Fed. R. Civ. P. 15(a), which generally provides for the amendment of pleadings, is to enable a party to assert matters that were overlooked or were *unknown at the time the party interposed the original complaint* or answer." *Wright & Miller*, 6 Fed. Prac. & Proc. Civ. § 1473 (3d ed. 2019) (emphasis added). A party may still "amend a complaint after discovery has been completed and defendants have filed summary judgment motions, even when the basis for the amendment existed at the time of the original complaint." *Miller v. Selsky*, 234 F.3d 1262, 2000 U.S. App. LEXIS 29697, at *6 (2d Cir. Nov. 21, 2000); *see also Friedl v. City*

*of N.Y.*, 210 F.3d 79, 88 (2d Cir. 2000) (granting leave to amend when amendment was requested

after discovery revealed new relevant facts); *Daniels v. Loizzo*, 174 F.R.D. 295, 298 (S.D.N.Y.

1997) ("Although plaintiff waited nine years to submit the proposed amendments, the delay, by

itself, provides no basis to deny plaintiff's motion to amend" and because the "[new] claims arise

from the [same incident] and relate closely (if not exclusively) to the original . . . allegations, any

additional discovery will not be sufficiently extensive to preclude plaintiff from amending the

Complaint."); *Am. Elec. Power Co. v. Westinghouse Elec. Corp.*, 418 F. Supp. 435, 443

(S.D.N.Y. 1976) (granting plaintiffs' motion to amend, made around same time as defendant's

motion for summary judgment, because it was based substantially on information only recently

obtainable during pretrial discovery; fact that it was also based on documents it had obtained

over one year before initiation of the motion to amend did not amount to inordinate or

inexcusable delay).

Here, as in *Miller*, Emerson should be "allowed to amend [its] complaint to add new facts

because the facts [are] merely variations on the original theme . . . and do not raise wholly new

claims." *Miller v. Selsky*, 234 F.3d 1262, 2000 U.S. App. LEXIS 29697, at *2 (2d Cir. Nov. 21,

2000); *see also Expoconsul Int'l, Inc. v. A/E Sys., Inc.*, 145 F.R.D. 336, 337–38 (S.D.N.Y. 1993)

(granting plaintiff's motion to amend despite five years' having passed since the action's

commencement, and over 5,600 pages of deposition testimony had been taken, because the

motion was not made in bad faith, and delay alone would not justify the motion's denial).

Moreover, Emerson included the additional facts it adduced in discovery and contained in

its proposed Amended Complaint in its summary judgment motion, which was fully briefed by

the parties. "Courts have treated an issue presented for the first time in a motion for summary

judgment as a request for an amendment to the complaint." *Klein v. Frenkel*, No. 14-cv-2719

(ADS) (ARL), 2015 U.S. Dist. LEXIS 194111, at *13 (E.D.N.Y. Feb. 19, 2015); *see also Neri v. Coughlin*, No. 92 CIV. 7890 (SS), 1993 U.S. Dist. LEXIS 15892, at *19–20 (S.D.N.Y. Nov. 9, 1993)("This is the first time plaintiffs raise this claim before this Court, however, since an issue presented for the first time in a motion for summary judgment may be considered and treated as an amendment of the complaint, and since defendants received notice of this claim and responded to it in their reply memorandum of law in support of their motion for summary judgment, I will address the issue."); *accord, Clomon ,* 988 F.2d at 1323 ("The undisputed facts as presented on the summary judgment motion served as a basis to deem the complaint amended to conform with the proof pursuant to Fed. R. Civ. P. 15[b]).").

Accordingly, Emerson is not seeking leave to amend in bad faith, nor is this motion a strategic dilatory tactic. The purpose for Emerson's motion is only to conform its already pleaded claims to the facts developed in discovery and already presented and fully briefed on its summary judgment motion.

## B.   Holmes Cannot Show That He Will Suffer Prejudice

For a nonmoving party to keep the moving party from amending its pleadings based on prejudice, the nonmoving party must show actual prejudice, and not just the possibility of prejudice. *Picard v. Estate of Mendelow* (*In re Bernard L. Madoff Invs. Secs. LLC*), 560 B.R. 208, 224 (Bankr. S.D.N.Y. 2016); *see also Kreppein v. Celotex Corp.*, 969 F.2d 1424 (2d Cir. 1992) (ruling that the district court properly granted the plaintiff leave to amend to assert a claim for survival action damages, where the Complaint initially pleaded a claim for wrongful death damages, because the defendants were on notice of the facts underlying the claim, and were not prejudiced by adding the claim).

Here, Holmes is not prejudiced by Emerson's proposed amendment.  Emerson's purpose in requesting to amend its Complaint is simply to conform its already pleaded alter ego claim with the facts first uncovered during discovery and previously delineated in its Rule 56.1(a) statement in support of its summary judgment motion. Emerson's proposed amendment would cause no conceivable prejudice to defendants, because Emerson's proposed Amended Complaint merely elaborates on its original alter-ego claim, requires no additional discovery, and would not delay the disposition of the case.  *See WIXT Television, Inc. v. Meredith Corp.*, 506 F. Supp. 1003, 1010 (N.D.N.Y. 1980) ("Since defendant . . . is already familiar with the assertions made in the proposed complaint, it will not be surprised or prejudiced by the additional allegations that plaintiff has proposed."); *see also M.E.S., Inc.*, 2014 U.S. Dist. LEXIS 88107, at *10 ("It is common for a party to refine its litigation theory through the benefit of discovery . . .."); *Haddock v. Nationwide Fin. Servs.*, 514 F. Supp. 2d 267 (D. Conn. 2007) (allowing amendment where the plaintiff's legal theory of the case "simply evolved throughout discovery," and the new claim was "merely a variation" on previous claims).

## C.      Emerson Has Proceeded in Good Faith

Emerson has acted in good faith in requesting leave to amend.  As part of its motion for summary judgment on its alter-ego liability claim, Emerson addressed the facts it uncovered during discovery regarding AMA's conveyance to Holmes of its ownership of CSI in consideration for the November 15, 2006 Assignment Assumption Agreement and the $50,000 payment by Holmes, as well as Holmes' post-Judgment treatment of those transactions.  Holmes responded to the additional facts in his Rule 56.1(b) Statement and his opposition papers, although as shown in Emerson's summary judgment reply, Holmes did not and could not legitimately dispute them.  In any event, Emerson's motion for leave to Amend its Complaint is

13

confined to the same facts addressed in its summary judgment motion on its alter ego claim, and

if the motion to amend is granted, no additional discovery would be required as a result of those

limited amendments.  Accordingly, Holmes cannot show any bad faith by Emerson's motion

which simply seeks to conform its already pleaded alter ego claim to those additional facts fully

briefed on Emerson's summary judgment motion.  Indeed, even without the motion, the Court has

the ability to deem the Complaint amended by operation of Rule 15(b). *See Clomon ,* 988 F.2d at

1323 ("The undisputed facts as presented on the summary judgment motion served as a basis to

deem the complaint amended to conform with the proof pursuant to Fed. R. Civ. P. 15[b]).").

### D.    <u>Emerson's Proposed Amendment Is Not Futile</u>

Finally, the amendments in the proposed Amended Complaint regarding AMA's

conveyance of its ownership of CSI to Holmes and Holmes' Post-Judgment repudiation of the

consideration for that conveyance, the November 15, 2006 Assignment and Assumption

Agreement, are not futile, because including additional facts to support Emerson's alter ego

claim would not cause the alter ego claim to fail under Fed. R. Civ. P. 12(b)(6). *Lucente v. IBM*,

310 F.3d 243, 258 (2d Cir. 2002) ("An amendment to a pleading is futile if the proposed claim

could not withstand a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6)."). Under that

standard, the proper inquiry "is not whether a [moving party] will ultimately prevail but whether

[that party] is entitled to offer evidence to support the claims." *Todd v. Exxon Corp.*, 275 F.3d

191, 198 (2d Cir. 2001). As long as the party seeking to amend "has at least colorable grounds

for relief, justice require[s]" that the Court grants its motion to amend. *Ryder Energy Distrib.*

*Corp. v. Merrill Lynch Commodities, Inc.*, 748 F.2d 774, 783 (2d Cir. 1984).

"The party opposing the amendment has the burden of demonstrating that leave to amend

would be futile, and, in considering this question, the Court reads the claims at issue in the light

most favorable to [the moving party] and drawing all inferences in his favor." *Ouedraogo v. A-1 Int'l Courier Serv. (AJN)*, No. 12 Civ. 5651 (AJN), 2013 U.S. Dist. LEXIS 96091, at *18 (S.D.N.Y. July 8, 2013); *see also Staskowski v. County of Nassau (WDW)*, No. 05-CV-5984 (SJF)(WDW), 2007 U.S. Dist. LEXIS 86319, at *4 (E.D.N.Y. Nov. 21, 2007) ("It is axiomatic that the party opposing an amendment has the burden of establishing that leave to amend would be futile."). This liberal standard reflects the Supreme Court's instruction on a Fed. R. Civ. P. 15(a) motion, "[i]f the underlying facts and circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits." *Foman*, 371 U.S. at 182.

Under New York law to pierce a corporation's corporate veil based on an alter ego theory of liability, a plaintiff must show: "(1) the owners exercised complete domination of the corporation in respect to the transaction attacked; and (2) that such domination was used to commit a fraud or wrong against the plaintiff which resulted in plaintiff's injury." *Morris v. State Dep't of Taxation & Fin.*, 82 N.Y.2d 135, 141, 623 N.E.2d 1157, 1160–61 (1993). At the pleading stage, an alter ego claim requires a plaintiff to "adequately allege the existence of a corporate obligation and that [the] defendant exercised complete domination and control over the corporation and abused the privilege of doing business in the corporate form to perpetrate a wrong or injustice." *Cortlandt St. Recovery Corp. v. Bonderman*, 31 N.Y.3d 30, 47–48, 96 N.E.3d 191, 203–04 (2018).

"While complete domination of the corporation is the key to piercing the corporate veil, especially when the owners use the corporation as a mere device to further their personal rather than the corporate business, such domination, standing alone, is not enough; some showing of a

wrongful or unjust act toward plaintiff is required." *Morris*, 82 N.Y.2d at 141–42. To determine

whether the domination element is satisfied, courts consider ten (10) factors:

> (1) the absence of the formalities and paraphernalia that are part and parcel of the corporate existence, i.e., issuance of stock, election of directors, keeping of corporate records and the like, (2) inadequate capitalization, (3) whether funds are put in and taken out of the corporation for personal rather than corporate purposes, (4) overlap in ownership, officers, directors, and personnel, (5) common office space, address and telephone numbers of corporate entities, (6) the amount of business discretion displayed by the allegedly dominated corporation, (7) whether the related corporations deal with the dominated corporation at arm['s] length, (8) whether the corporations are treated as independent profit centers, (9) the payment or guarantee of debts of the dominated corporation by other corporations in the group, and (10) whether the corporation in question had property that was used by other of the corporations as if it were its own.

*Wm. Passalacqua Builders v. Resnick Developers S.*, 933 F.2d 131, 139 (2d Cir. 1991).

There is "no set rule as to how many of these factors must be present in order to pierce

the corporate veil, [but] the general principle followed by the courts has been that liability is

imposed when doing so would achieve an equitable result." *William Wrigley Jr. Co. v. Waters*,

890 F.2d 594, 600-01 (2d Cir. 1989).

Magistrate Locke's R&R concluded that "Holmes is the one-hundred percent owner of

AMA" and "that AMA's corporate address was the same as Holmes's personal residence during

the litigations that resulted in the unpaid Judgments." (ECF Dkt. No. 65, R&R p. 28). But

Holmes also admitted that he is AMA's alter-ego.  Indeed, Holmes testified regarding AMA's

financing proposal for its acquisition of CSI: "Trust me, everybody . . . knew that AMA was

Charles Holmes." (ECF Dkt. No. 56, 56.1(b) St. ¶¶ 43-46).  Holmes further testified: "I'm a

person and I control AMA and I'm a person and I control CSI because I own both of them–the

stock of them, *they're my affiliate*." (ECF Dkt. No. 56, 56.1(b) St. ¶ 149)(emphasis added).

Others, including Holmes' friend Dennis McCarthy, who Holmes installed as an unpaid

officer of AMA, and president of CSI, echoed Holmes' admissions concerning his alter-ego

status:

> Q:      What is the business of Asset Management Associates of New York
>         that you're a secretary and treasurer of?
>
> A:      It's–that's a good question. Asset Management Associates of New
>         York I like to think as a generic corporation of Charles Holmes that
>         he uses for his business interests.

(ECF Dkt. No. 56, 56.1(b) St. ¶ 153). Similarly, when asked about AMA's acquisition of CSI,

McCarthy testified that: "If you tell me it was AMA, Asset Management Associates worked out

the acquisition and then it turned into CSI, as far as I'm concerned, Charlie Holmes bought

it." (ECF Dkt. No. 56, 56.1(b) St. ¶ 154).

Even though the domination factors found in the R&R and Holmes' admissions will

establish the first prong of Emerson's alter ego and veil-piercing claim, the supplemental

allegations in Emerson's proposed Amended Complaint provide further evidence of domination

through *Passalacqua* factors.

There is substantial evidence that the transaction wherein AMA conveyed its ownership

of CSI that it had purchased from ETP for $6 million only seven (7) days earlier in exchange for

Holmes' payment of $50,000 and CSI's agreement to assume all of AMA's liabilities and

obligations under its agreements with Emerson and ETP establishes three (3) additional

*Passalacqua* factors–(i) "payment or guarantee of debts of the dominated corporation by other

corporations in the group," (ii) "the amount of business discretion displayed by the allegedly

dominated corporation," and (iii) "whether the related corporations deal with the dominated

corporation at arm's length."

For starters, while AMA's liabilities and obligations under the Acquisition Agreement were unknown and potentially nothing, the consideration for this transaction involved CSI assuming (or "guarantee[ing]") AMA's debts and obligations into the future. Also, as AMA's sole director, Holmes alone approved AMA's Written Consent to enter into the November 15, 2006 Assignment and Assumption Agreement and the Bill of Sale transferring title to the assets AMA recently purchased for $6 million to CSI receiving no cash or asset consideration. Holmes also approved CSI's Written Consent to enter into the November 15, 2006 Assignment and Assumption Agreement and, Holmes also approved CSI's sale of the assets to himself for $50,000. This relationship between the parties to the transaction, and the fact that it involved an asset purchase for far less than the valuation at which the same assets were sold only seven (7) days earlier, provides further evidence that the transaction was not conducted at arm's length, and that AMA had no business discretion.  Indeed, when considering the transaction on Emerson's summary judgment motion, Magistrate Judge Locke concluded that "the closing documents reflecting Holmes' payment to AMA of $50,000 for the CSI stock, standing alone, are insufficient to raise a genuine dispute regarding Emerson's showing that such payment was not made in 'good faith' and was not a 'fair equivalent value' for the stocks conveyed." ("R&R," pg. 20).  Considered together with Holmes' admissions of his alter-ego status, and the previously determined existence of *Passalacqua* factors, Emerson has established the first element of complete domination regarding its alter ego and veil-piercing claim.

With respect to the second prong of alter-ego liability, "[a] claimant can prevail without proving fraud if the claimant can identify some non-fraudulent wrong attributable to the defendant's complete domination [of the debtor]." *Americore Drilling & Cutting, Inc. v. EMB Contr. Corp.,* 55 Misc. 3d 1207(A), 2017 N.Y. Misc. LEXIS 1180 *19 (N.Y. Sup. Apr. 3, 2017);

*see also TNS Holdings, Inc. v. MKI Sec. Corp.,* 92 N.Y.2d 335, 340, 680 N.Y.S.2d 891 (1998)(the

second prong is met where the defendant misused "the corporate form for [his] personal ends so as

to commit a fraud *or wrong doing or avoid any of its obligations*.")(emphasis added).  The

requisite wrongful conduct can also include a sole owner's use of his domination and control to

deliberately dishonor the corporation's financial obligations. *See Pae v. Chul Yoon,* 41 A.D.3d

681, 682, 838 N.Y.S.2d 172 (2d Dep't 2007)("[The] testimony at trial established that the plaintiff

and the appellant's corporation entered into a valid agreement for the sale and purchase of goods,

and that the appellant, the sole owner of the corporation, dominated the corporation and *was solely*

*responsible for the wrongful failure of the corporation to pay the plaintiff.*")(emphasis added).

Here, as fully briefed in Emerson's summary judgment motion, there is no legitimate

dispute that Holmes committed wrongs against Emerson by conveying to himself all of AMA's

cash and assets during the litigations with Emerson and ETP.  Holmes does not dispute that "[he]

authorized, and does not dispute receiving, these $2,438,013 in conveyances from AMA during

the time AMA was a defendant in the underlying litigations that resulted in the unpaid

Judgments." (56.1(b) St. ¶ 177).  The Report correctly concludes that "there is no genuine

dispute regarding fair consideration" and that Holmes "does not raise any facts to dispute

Emerson's claim that these conveyances were not made for fair consideration." (Report, 19).

Thus, the Report correctly concludes that these conveyances made by AMA to Holmes during

the underlying litigation were fraudulent under DCL § 273-a.  (R&R, 20).

These undisputed fraudulent conveyances under DCL § 273-a are evidence of wrongful

conduct to justify piercing the corporate veil and holding Holmes liable to satisfy the unpaid

Judgments. *See, e.g., Atateks Foreign Trade Ltd. v. Private Label Sourcing, LLC*, 402 Fed.

Appx. 623, 626 (2d Cir. 2010)(affirming finding that "the constructive fraudulent transfer to

Second Skin of more than $306,000 in commission payments, which should have been paid to Private Label, was a wrong resulting in plaintiffs' injury because the commissions exacerbated defendants' insolvency and rendered them less able to pay damages."); see also *First Keystone*, 871 F. Supp. at 127 (piercing the veil where "the record demonstrates that the [individual plaintiffs'] domination of [corporate plaintiff] led to the diversion of at least $1,094,600 from [corporate plaintiff's] bank accounts to the [individual plaintiffs'] personal bank accounts between 2005 and 2009, thereby rendering [corporate plaintiff] insolvent and unable to pay the Arbitration Award and Judgment awarded to [defendant]"); *see also Marketplace LaGuardia Ltd. P'ship v. Harkey Enters., Inc.*, 07-cv-1003, 2008 U.S. Dist. LEXIS 25479 *5 (E.D.N.Y. Mar. 31, 2008)("A classic example of a 'fraud or wrong' in satisfaction of this prong of the alter ego analysis is the stripping of the assets of the dominated corporation for the purposes of rendering it judgment proof.").

The transactions regarding AMA's November 15, 2006 conveyance of its ownership of CSI to Holmes for $50,000 and the November 15, 2006 Assignment and Assumption Agreement, which are the subject of Emerson's proposed Amended Complaint, is additional evidence of wrongful conduct that can be used to support Emerson's alter-ego claim.

In addition to conveying to himself all of AMA's cash and assets during the underlying litigations which began in April, 2008, Holmes also directed AMA to convey to him its ownership of CSI after AMA's $6 million purchase before the litigations began.  The sole consideration for this insider transaction was $50,000 and Holmes' execution of the November 15, 2006 Assignment and Assumption Agreement, promising to have CSI fund AMA's liabilities and obligations in connection with the underlying transactions with Emerson and ETP.  (R&R, pg. 20)(ECF No. 57-27, November 15, 2006 Assignment and Assumption Agreement).  The

effect of this transaction was to leave AMA with no assets to potentially satisfy its obligations under the Acquisition Agreement with Emerson. In fact, Holmes left AMA with no reserves for its contingent liabilities to Emerson and ETP because he further systematically depleted it of all of its cash and assets during the years of the underlying litigations. By using his domination to direct AMA to divert all assets that could have been used to satisfy the unpaid Judgments to himself, Holmes both harmed Emerson and abused the corporate form to commit this wrong.

Besides rendering AMA judgment-proof, this transaction also enabled Holmes to harm Emerson. The evidence submitted on Emerson's summary judgment motion establishes that consistent with the November 15, 2016 Assignment and Assumption Agreement that served as the only purported "fair" consideration for AMA's transfer of its ownership of CSI to Holmes, CSI funded all of AMA's legal and arbitration fees and expenses during the underlying litigations. (ECF No. 57-31)(Invoices and Checks reflecting CSI's payment of the legal and arbitration fees and expenses in the underlying litigations). However, after AMA lost on the merits in the underlying litigations and following entry of the final Judgments, Holmes, as sole owner and controller of both AMA and CSI, refused to honor the November 15, 2006 Assignment and Assumption Agreement and have CSI satisfy the Judgments as obligated, thereby eviscerating the sole consideration for AMA's post-acquisition conveyance to him of CSI's stock. Without the consideration of November 15, 2006 Assignment and Assumption Agreement, the sole purported consideration for AMA's transfer of CSI's stock to Holmes was reduced to the $50,000 insider payment made by Holmes, which, standing alone, was an "not made in 'good faith' and was not a 'fair equivalent value' for the stocks conveyed." (R&R, pg. 20).

Accordingly, the evidence regarding the November 15, 2006 transaction which had AMA convey its ownership of CSI to Holmes in consideration for $50,000 and the November 15, 2006

Assignment and Assumption Agreement, and Holmes' treatment of that transaction following the entry of the Final Judgments at issue in this judgment enforcement litigation, supports Emerson's originally pleaded alter-ego claim.  Emerson's proposed amendment simply seeks to add to the Complaint the additional facts supporting its alter ego claim already addressed and fully briefed by the parties on Emerson's summary judgment motion.

## CONCLUSION

For the foregoing reasons, Emerson respectfully requests that the Court grant Emerson leave to file its proposed Amended Complaint in connection with Emerson's motion for summary judgment, in addition to such other and further relief as this Court deems just and proper.

Dated: New York, New York
        November 1, 2019                    Respectfully submitted,

                                            SIMON·LESSER PC


                                            By:_____
                                             Leonard F. Lesser, Esq.
                                             355 Lexington Avenue
                                             New York, New York 10017
                                             212.599.5455

                                            *Attorneys for Plaintiff Emerson Electric Co.*