UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------x
EMERSON ELECTRIC CO.,

Plaintiff,

- against -

CHARLES S. HOLMES and ASSET MANAGEMENT ASSOCIATES OF NEW YORK, INC.,

Defendants.
-------------------------------------------------------x

**MEMORANDUM & ORDER**
16-CV-1390 (PKC) (SIL)

PAMELA K. CHEN, United States District Judge:

On March 21, 2016, Plaintiff Emerson Electric Co. ("Emerson") initiated a diversity action against Defendants Charles S. Holmes ("Holmes") and Asset Management Associates of New York, Inc. ("AMA") seeking post-judgment relief, pursuant to Federal Rule of Civil Procedure ("FRCP") 69 and New York Civil Practice Law & Rules ("CPLR") § 5225, to void allegedly fraudulent conveyances made by AMA[1] to its president and sole owner, Holmes, under New York Debtor and Creditor Law ("DCL") §§ 273-a and 276, and to pierce the corporate veil of AMA, so that Plaintiff may collect fully on two prior judgments obtained against AMA. (Complaint ("Compl."), Dkt. 1, ¶¶ 1–4.) AMA has defaulted in this matter. (Certificate of Default as to AMA, Dkt. 16 (dated October 25, 2016).)

Currently pending before the Court are the parties' objections to the following recommendations of the Honorable Steven I. Locke, Magistrate Judge: (1) that Plaintiff's motion for summary judgment against Holmes for fraudulent conveyance under DCL § 273-a be granted

[1] Defendant AMA was a New York corporation that ceased operations in February 2014 following the filing of a bankruptcy petition in the United States Bankruptcy Court for the District of New Jersey. (*See generally* Bankruptcy Petition, Dkt. 57-33.)

as to liability, but not as to damages, and that a trial be scheduled to determine damages; (2) that Plaintiff's motion for summary judgment against Holmes for fraudulent conveyance under DCL § 276 and to pierce AMA's corporate veil to hold Holmes liable for AMA's liabilities be denied; and (3) that Plaintiff's motion for a default judgment against AMA be denied.[2] (Report & Recommendation ("R&R"), Dkt. 65, at 32.) Based on additional briefing directed by the Court, the Court is also addressing for the first time Plaintiff's summary judgment motion seeking dismissal of Holmes's affirmative defenses.

For the reasons that follow, the Court adopts in part, modifies in part, and declines to adopt in part Judge Locke's recommendations. Furthermore, because Plaintiff did not name Holmes in his capacity as the transferee of the fraudulent conveyance but solely in this capacity as the alter ego of AMA, the Court schedules a status conference to discuss with the parties whether the Court should permit Plaintiff to amend its complaint to correct that deficiency at this juncture or whether this matter should proceed directly to trial.

**BACKGROUND**

The Court assumes the parties' familiarity with the facts of this action as thoroughly recited in Judge Locke's R&R, incorporates those facts herein, and summarizes only the relevant history of the present motions.

[2] The Court notes that New York State enacted the "Uniform Voidable Transactions Act" on December 6, 2019, which repealed and replaced certain provisions related to fraudulent conveyances, including DCL §§ 273, 273-a, and 276. *See Great Atlantic & Pacific Tea Co., Inc. v. 380 Yorktown Food Corp.*, No. 16-CV-5250 (NSR), 2020 WL 2139699, at *17 n.19 (S.D.N.Y. May 4, 2020) (citing 2019 N.Y. Laws, ch. 580 (A5622)). Despite an effective date of April 4, 2020, the amendment does not "apply to a transfer made or obligation incurred before such effective date, nor [does] it apply to a right of action that has accrued before such effective date." *Id.* (citing same at § 7 and *Ray v. Ray*, 799 F. App'x 29, 31 n.1 (2d Cir. 2020) (summary order). The change in law, therefore, does not impact the Court's decision.

## I. Factual Background[3]

On November 8, 2006, Emerson Telecommunications Products LLC ("ETP"), Emerson's affiliate, and AMA executed an Acquisition Agreement, pursuant to which ETP transferred to AMA "the capital stock of Emerson Network Power Optical Connectivity Solutions, Inc.[,] . . . as well as certain business assets of Emerson Network Power Connectivity Solutions, Inc." *Emerson Elec. Co. v. Asset Mgmt. Assocs. of N.Y., Inc.*, No. 08-CV-1489 (TCP) (AKT), 2012 WL 976051, at *1 (E.D.N.Y. Mar. 20, 2012). (*See also* Nov. 8, 2006 Acquisition Agreement, Dkt. 57-30.) Per the terms of the Acquisition Agreement, the name Emerson Network Power Optical Connectivity Solutions, Inc. ("ENPOCS") was changed to CSI Technologies, Inc. ("CSI") after closing. (Nov. 8, 2006 Acquisition Agreement, Dkt. 57-30, § 2.1(c).) AMA paid Plaintiff $6 million for CSI. (Holmes's 56.1 Response ("Holmes's 56.1"), Dkt. 64, ¶ 14.) After AMA's purchase of CSI, AMA conveyed its ownership of all of the shares of common stock of CSI to Holmes.[4] (*Id.* ¶ 49.) After closing, ETP sought a purchase price adjustment and payment in its favor from AMA, per the terms of the Acquisition Agreement. (*Id.* ¶ 16.) The parties disputed the purchase price

[3] Unless otherwise noted, a standalone citation to a party's 56.1 statement denotes that this Court has deemed the underlying factual allegation undisputed. Any citation to a party's 56.1 statement incorporates by reference the documents cited therein. Where relevant, however, the Court may cite directly to the underlying document. The Court has deemed facts averred in a party's 56.1 statement to which the opposing party cites no admissible evidence in rebuttal as undisputed. *See Lumbermens Mut. Cas. Co. v. Dinow*, No. 06-CV-3881 (TCP), 2012 WL 4498827, at *2 n.2 (E.D.N.Y. Sept. 12, 2012) ("Eastern District Local Rule 56.1 requires . . . that disputed facts be *specifically* controverted by admissible evidence. Mere denial of an opposing party's statement or denial by general reference to an exhibit or affidavit does not specifically controvert anything." (emphasis in original)). Additionally, to the extent a party's 56.1 statement "improperly interjects arguments and/or immaterial facts in response to facts asserted by [the opposing party] without specifically controverting those facts," the Court has disregarded the statement. *Risco v. McHugh*, 868 F. Supp. 2d 75, 87 n.2 (S.D.N.Y. 2012).

[4] These conveyances are not the subject of Plaintiff's current motion to void fraudulent transfers. (*Compare* Holmes 56.1, Dkt. 64, ¶ 49, *with id.* ¶¶ 105–06.)

adjustment, leading AMA to file suit. *See* Notice of Removal, *Asset Mgmt. Assocs. of N.Y. Inc. v. Emerson Telecomm. Prods. LLC*, No. 08-CV-2128 (TCP) (AKT) (E.D.N.Y. May 27, 2008) ("No. 08-cv-2128"). The dispute was ultimately submitted to arbitration. (Plaintiff's 56.1 Statement ("Pl.'s 56.1"), Dkt. 56, ¶ 21; Holmes's 56.1, Dkt. 64, ¶ 21.) An arbitration award in Plaintiff's favor was issued on November 7, 2013 (Arbitration Determination, Dkt. 57-16), and confirmed by court order on December 17, 2013 (Dec. 17, 2013 Order, Dkt. 57-18). On January 9, 2014, judgment was entered against AMA in the amount of $1,965,081.40, plus 9% post-judgment interest pursuant to CPLR §§ 5003 and 5004. (Pl.'s 56.1, Dkt. 56, ¶¶ 34–37; *see also* Dec. 17, 2013 Order, Dkt. 57-18; Jan. 9, 2014 Judgment, Dkt. 57-5.)

Along with the Acquisition Agreement, Plaintiff and AMA executed a Transition Services Agreement ("TSA") on November 8, 2006. (Nov. 8, 2006 TSA, Dkt. 57-57.) Pursuant to the TSA, Plaintiff agreed to provide manufacturing and support operations for CSI for one year, and AMA agreed to reimburse Emerson for those services. (*Id.*) At some point, AMA stopped reimbursing Plaintiff, and on April 10, 2008, Emerson sued AMA for breach of contract. *See Emerson Elec. Co. v. Asset Mgmt. Assocs. of N.Y., Inc.*, No. 08-CV-1489 (LDW) (SIL) (E.D.N.Y. Apr. 10, 2008) ("No. 08-cv-1489"). On March 20, 2012, the Honorable Leonard D. Wexler granted summary judgment on Plaintiff's breach of contract claim as to the TSA and directed that a trial be held on damages and reasonable attorneys' fees. *See Emerson Elec. Co.*, 2012 WL 976051, at *7–9. Following a bench trial, Judge Wexler entered a judgment in favor of Emerson in the amount of $1,966,246.35 on August 13, 2015. (Aug. 13, 2015 Judgment, Dkt. 57-4.)

AMA did not appeal either the January 9, 2014 Judgment or August 13, 2015 Judgment, nor did it make any motion to vacate or otherwise modify them.[5] To date, these Judgments have not been satisfied, and Plaintiff seeks post-judgment relief to recover from AMA's president and sole owner, Holmes. (Pl.'s 56.1, Dkt. 56, ¶¶ 4–5; Holmes's 56.1, Dkt. 64, ¶¶ 4–5.)

## II. Procedural History

### A. Commencement of This Action

Plaintiff filed this action seeking post-judgment relief as to the January 9, 2014 and August 13, 2015 Judgments against Defendants on March 21, 2016. (Compl., Dkt. 1, ¶ 4.) Plaintiff alleges that, during the litigation of Nos. 08-cv-2128 and 08-cv-1489, Holmes "methodically stripped AMA of its assets by disregarding corporate formalities for the purpose of avoiding collection on the Judgments." (*Id.* ¶ 5.) The complaint further alleges that Holmes's "systematic control and domination of AMA and the manipulation of its assets . . . constitute[] an abuse of the privilege of doing business in the corporate form to further Holmes'[s] personal interests and to cause harm to AMA's non-insider creditors, including Emerson and ETP" (*id.*), and that, because of Holmes's complete domination and control of AMA, the corporation is merely an alter ego of Holmes (*see id.* ¶¶ 49–98). Plaintiff also alleges that Holmes directed AMA to fraudulently transfer assets and cash to his personal accounts, without fair consideration, with the intention of hindering, delaying, and defrauding its creditors, and to make AMA judgment-proof under DCL §§ 273-a and 276. (*Id.* ¶¶ 6, 99–135.)

On May 24, 2016, Holmes filed his answer, in which he asserted eight affirmative defenses, including equitable estoppel and unclean hands. (*See* Answer, Dkt. 5, at 18–19.) AMA failed to

---

[5] On December 21, 2015, ETP assigned the January 9, 2014 Judgment to Plaintiff for consolidation of its judgment and enforcement claims against AMA. (Assignment of Judgment, Dkt. 57-19.)

appear or otherwise defend this action,[6] and on October 25, 2016, the Clerk of Court entered a certificate of default against AMA. (Clerk's Certificate of Default, Dkt. 16.)

On June 15, 2017, Plaintiff requested a pre-motion conference in anticipation of filing a motion to strike Holmes's affirmative defenses of equitable estoppel and unclean hands. (Dkt. 22.) Judge Wexler referred that request and any resulting motions to Magistrate Judge Locke. (Order, Oct. 5, 2017.) On January 31, 2018, Plaintiff filed the motion to strike (Plaintiff's Motion to Strike, Dkt. 37), and, while the motion was pending, Emerson and Holmes both requested pre-motion conferences in anticipation of cross-motions for summary judgment on February 27, 2018 (Dkts. 44, 45).

On May 11, 2018, following reassignment of the case to the undersigned, the Court referred the parties' requests for pre-motion conferences and any resulting motions to Judge Locke. (Order, May 11, 2018.) On July 18, 2018, Judge Locke set a briefing schedule for the cross-motions for summary judgment. (Dkt. 52.) On November 21, 2018, Holmes withdrew his request to file a cross-motion for summary judgment (Dkt. 54), and, on January 11, 2019, Plaintiff filed its motions for summary judgment against Holmes on Plaintiff's DCL §§ 273-a and 276 claims, and for a default judgment against AMA on those claims. (Dkt. 55.)

**B. Report and Recommendation**

Judge Locke issued his R&R on June 14, 2019, recommending that this Court grant in part and deny in part Plaintiff's motions. (R&R, Dkt. 65.) Specifically, Judge Locke recommended that (1) Plaintiff's motion to strike Holmes's equitable estoppel and unclean hands affirmative defenses be denied (*id.* at 17); (2) Plaintiff's motion for summary judgment against Holmes for

[6] Plaintiff executed a summons on September 14, 2016, with an answer due on October 5, 2016. (*See* Dkt. 12.)

fraudulent conveyance under DCL § 273-a be granted against Holmes as to liability but denied as to damages, and that a trial be scheduled to determine damages (*id.* at 21–22); (3) Plaintiff's motion for summary judgment against Holmes for fraudulent conveyance under DCL § 276 be denied (*id.* at 24); (4) Plaintiff's summary judgment motion be denied with respect to piercing AMA's corporate veil to hold Holmes liable for AMA's liabilities[7] (*id.* at 30); (5) Plaintiff's motion for default judgment against AMA be denied (*id.* at 32); and (6) Plaintiff be granted leave to amend its complaint to include additional claims for fraudulent conveyance under DCL §§ 273 and 274, which were raised for the first time in summary judgment briefing (*id.* at 25–26).

**C. Motions Before the Court**

On September 26, 2019, pursuant to 28 U.S.C. § 636(b)(1), the Court modified the R&R in part and deferred ruling in part. (Order, Sept. 26, 2019.) The Court modified the recommendation that Plaintiff be granted leave to amend its complaint to include new claims under DCL §§ 273 and 274, directing instead that Plaintiff could file a motion seeking leave to amend its complaint. (*Id.*) The Court also granted Defendants leave to propose an amended answer, conforming the proposed affirmative defenses therein to the pleading standard that had been recently clarified by the Second Circuit in *GEOMC Co. v. Calmare Therapeutics*, 918 F.3d 92 (2d Cir. 2019), decided after Plaintiff had filed its motion for summary judgment. (*Id.*) The Court also deferred ruling on the other pending motions at that time. (*Id.*)

[7] As noted in the R&R, Plaintiff's allegations about piercing AMA's corporate veil "do[] not constitute an independent cause of action under New York law, 'but rather [are] a means of imposing liability on an underlying cause of action.'" (*See* R&R, Dkt. 65, at 26 (quoting *British Marine PLC v. Aavanti Shipping & Chartering Ltd.*, No. 13-CV-839 (BMC), 2014 WL 2475485, at *2 (E.D.N.Y. June 3, 2014)).) Thus, the Court treats Plaintiff's objection to this recommendation as part and parcel of the R&R's recommendation to grant Plaintiff summary judgment as to liability on its DCL § 273-a claim. (R&R, Dkt. 65, at 21–22.)

Plaintiff filed its motion to amend and proposed an amended complaint on November 1, 2019 (Dkt. 74), which the Court granted and adopted as the operative amended complaint on December 2, 2019 (Order, Dec. 2, 2019). In its Amended Complaint, Plaintiff brought the same claims as in its initial complaint and did not amend to include the additional §§ 273 and 274 claims. (*Compare* Amended Complaint ("Am. Compl."), Dkt. 74-2, *with* Compl., Dkt. 1.) Holmes opposed Plaintiff's motion for leave to amend (Dkt. 76) and proposed an amended answer (Amended Answer ("Am. Answer"), Dkt. 76-2), which the Court also adopted (Dec. 2, 2019 Order). In his Amended Answer, Holmes elaborated on the factual basis for his previously pleaded equitable estoppel and unclean hands affirmative defenses; added a third affirmative defense, entitled the "*Brunswick* Doctrine," regarding Plaintiff's ability, as a matter of law, to hold Holmes personally liable; and listed several other affirmative defenses. (Am. Answer, Dkt. 76-2, at 23–29.)

On December 2, 2019, the Court ordered supplemental briefing, including on the issue of whether Plaintiff's pending motion to strike Holmes's affirmative defenses was moot in light of Holmes's amended answer. (*See* Order, Dec. 2, 2019.) The Court alternatively granted Plaintiff leave to move for summary judgment with respect to Holmes's asserted defenses. (*Id.*) The parties were also permitted to supplement their previously filed objections to Judge Locke's recommendations regarding the default judgment motion against AMA, as well as their original arguments relating to Plaintiff's summary judgment motion. (*Id.*) Supplemental briefing was completed on February 14, 2020. (*See* Plaintiff's Supplemental Summary Judgment Memorandum ("Pl.'s Supp."), Dkt. 78); Holmes's Supplemental Memorandum Opposing Summary Judgment ("Def.'s Supp."), Dkt. 79); Plaintiff's Reply, Dkt. 80).

In its supplemental briefing, Plaintiff acknowledges that its "earlier motion to strike the 'equitable estoppel' and 'unclean hands' defenses was superseded by [its] summary judgment motion which addresses the legal deficiencies of those defenses" (Pl.'s Supp., Dkt. 78, at 2), rendering Plaintiff's motion to strike moot.

**DISCUSSION**

Having resolved the motions to amend and motion to strike, this Court now rules on: (1) the parties' objections to Judge Locke's recommendations to (a) grant Plaintiff summary judgment as to liability on its DCL § 273-a claim, (b) deny Plaintiff summary judgment as to liability on its DCL § 276 claim, (c) deny Plaintiff summary judgment on piercing AMA's corporate veil, and (d) deny Plaintiff's default judgment motion against AMA; and (2) Plaintiff's newly filed summary judgment motion as to Holmes's affirmative defenses. For the reasons discussed below, the Court adopts in part, declines to adopt in part, and modifies in part, Judge Locke's recommendations. The Court also grants in part and denies in part Plaintiff's summary judgment motion.

In sum, the Court finds:

(1) Under DCL §§ 273-a and 276, a judgment creditor, such as Plaintiff, can sue a judgment debtor, such as Defendant AMA, to void the debtor's fraudulent conveyance of assets to a third party. The two statutes also permit a judgment debtor to sue a transferee or beneficiary of the fraudulently conveyed assets, such as Defendant Holmes, for monetary damages. Here, despite alleging that AMA fraudulently transferred assets to Holmes, Plaintiff did not sue Holmes as the transferee or beneficiary, but solely as AMA's alter ego[8] and thus as the transferor of the fraudulently conveyed assets. In recommending

[8] Although Plaintiff alleges details of the transfer of funds from AMA to Holmes in its amended complaint, the Court reaches the conclusion that Plaintiff currently names Holmes solely in his capacity as AMA's alter ego based on the language of the Amended Complaint. (*See, e.g.*, Am. Compl., Dkt. 74-2, ¶ 4 ("By this action, Emerson seeks post-judgment relief . . . to 'pierce the corporate veil' of judgment-debtor AMA, and to avoid fraudulent conveyances from AMA to . . . Holmes, under New York Debtor and Creditor Law §§ 273-a and 276."); *id.* ¶ 129 ("Piercing the corporate veil and imposing liability, jointly and severally, on Holmes for the payment of all amounts owed on the unpaid Judgments is necessary to achieve equity, and Holmes should be held responsible for the unpaid debts owed by AMA on the Judgments."); *id.* ¶ 145 (writing, in context of DCL § 273-a cause of action, that "Emerson requests that all conveyances without fair

summary judgment as to Holmes's liability under DCL § 273-a, Judge Locke did not consider this distinction and found Holmes's liability to be established based on his undisputed *receipt* of the fraudulently conveyed assets, *i.e.*, as the transferee or beneficiary of the assets. This was error, given that the complaint only names Holmes as a Defendant in his capacity as AMA's alter ego and there remain disputed issues of material fact with respect to Plaintiff's veil-piercing claim.

(2) Judge Locke's recommendation that there are material disputed facts concerning Plaintiff's request to pierce the corporate veil of AMA and hold Holmes liable is adopted.

(3) Judge Locke's recommendation as to the requested default judgment against AMA is not adopted in part and modified in part; a default judgment is appropriate to the extent that Plaintiff seeks to void the fraudulent conveyances from AMA to Holmes, but not as to an award of monetary damages based on the fraudulent conveyances by AMA, as transferor.

(4) Summary judgment on Holmes's "unclean hands" affirmative defense is granted, but summary judgment on his "equitable estoppel" affirmative defense is denied.

## I. Standards of Review

### A. Report and Recommendation

A district court reviewing a magistrate judge's recommended ruling "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). With respect to a magistrate judge's recommendation on a dispositive matter, the Court reviews *de novo* those determinations as to which a party has specifically objected. *See id.* ("A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made."); Fed. R. Civ. P. 72(b)(3) ("The district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to."). However, "objections that are merely perfunctory responses argued in an attempt to engage the district court in a rehashing of the same

consideration made by AMA to Holmes, or entities that he controls, during the pendency of the litigation that resulted in the Judgments, including those that are revealed in discovery, be avoided and that such funds be provided to Emerson for payment on the Judgments"); *id.* ¶ 166 (writing same in context of DCL § 276 cause of action); *id.* at 27 (describing relief sought).)

arguments set forth in the original papers will not suffice to invoke *de novo* review." *Frankel v. New York City*, No. 06-CV-5450 (LTS) (DFE), 2009 WL 465645, at *2 (S.D.N.Y. Feb. 25, 2009) (internal quotation marks alterations, and citation omitted). Accordingly, "[g]eneral or conclusory objections, or objections which merely recite the same arguments presented to the magistrate judge, are reviewed for clear error." *Chime v. Peak Sec. Plus, Inc.*, 137 F. Supp. 3d 183, 187 (E.D.N.Y. 2015) (internal quotation marks and citation omitted). Moreover, "[i]n this district and circuit, it is well established law that a district judge will not consider new arguments raised in objections to a magistrate judge's report and recommendation that could have been raised before the magistrate but were not." *Illis v. Artus*, No. 06-CV-3077 (SLT) (KAM), 2009 WL 2730870, at *1 (E.D.N.Y. Aug. 28, 2009) (internal quotation marks and citations omitted) (collecting cases).

### B. Summary Judgment

Summary judgment is appropriate where the submissions of the parties, taken together, "show[] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986) (holding that summary judgment inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law"). A dispute of fact is "genuine" if "the [record] evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

The initial burden of "establishing the absence of any genuine issue of material fact" rests with the moving party. *Zalaski v. City of Bridgeport Police Dep't*, 613 F.3d 336, 340 (2d Cir. 2010). Once this burden is met, however, the burden shifts to the nonmoving party to put forward some evidence establishing the existence of a question of fact that must be resolved at trial. *See Spinelli v. City of New York*, 579 F.3d 160, 166–67 (2d Cir. 2009); *see also Celotex Corp. v.*

*Catrett*, 477 U.S. 317, 322–23 (1986). A mere "scintilla of evidence" in support of the nonmoving party is insufficient; "there must be evidence on which the jury could reasonably find for the [non-movant]." *Hayut v. State Univ. of N.Y.*, 352 F.3d 733, 743 (2d Cir. 2003) (internal quotation marks omitted) (alteration in original). In other words, "[t]he nonmoving party must come forward with specific facts showing that there is a genuine issue for trial." *Caldarola v. Calabrese*, 298 F.3d 156, 160 (2d Cir. 2002) (internal quotation marks and citation omitted). In determining whether a genuine issue of fact exists, the court must resolve all ambiguities and draw all reasonable inferences against the moving party. *See Major League Baseball Props., Inc. v. Salvino, Inc.*, 542 F.3d 290, 309 (2d Cir. 2008). The Court also construes any disputed facts in the light most favorable to the nonmoving party. *See Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157–59 (1970). However, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Anderson*, 477 U.S. at 247–48.

"An affirmative defense can be dismissed on a summary judgment motion when that defense is unsupported by any evidence in the record." *Lifeguard Licensing Corp. v. Ann Arbor T-Shirt Co., LLC*, No. 15-CV-8459 (LGS), 2018 WL 3364388, at *1 (S.D.N.Y. July 9, 2018). "Where a plaintiff uses a summary judgment motion, in part, to challenge the legal sufficiency of an affirmative defense . . . a plaintiff may satisfy its Rule 56 burden by showing that there is an absence of evidence to support [an essential element of] the [non-moving party's] case." *F.D.I.C. v. Giammettei*, 34 F.3d 51, 54 (2d Cir. 1994) (alterations in original) (internal quotation marks and citation omitted); *see also Dauphin v. Crownbrook ACC LLC*, No. 12-CV-2100 (ARR) (SMG), 2013 WL 1498363, at *4 (E.D.N.Y. Apr. 11, 2013) (same).

**II. Fraudulent Conveyance Claims**

At the outset, the Court notes that Plaintiff asserts the substance of its fraudulent

conveyances claims against AMA. (*See* Am. Compl., Dkt. 74-2, ¶¶ 130–45 (second cause of action); *id.* ¶¶ 146–65 (third cause of action).) Plaintiff's complaint asks that the fraudulent conveyances made by AMA to Holmes, or entities that he controls, during the pendency of the litigation that resulted in the underlying judgments be voided (*id.* ¶ 166), and/or the Court pierce the corporate veil of AMA and hold Holmes liable for the unpaid judgments in addition to post-judgment interest (*id.* at 27). Plaintiff's complaint also plainly asserts that AMA is the party that owes money, and that Plaintiff "is the judgment-creditor of AMA." (*Id.* ¶¶ 1, 2.)

"A judgment creditor may raise several types of claims[,] . . . including a fraudulent conveyance claim against a third party to which the judgment debtor transferred assets, and a claim to pierce the judgment debtor's corporate veil and hold a third party responsible for the debtor's obligations." *Am. Federated Title Corp. v. GFI Mgmt. Servs., Inc.*, 126 F. Supp. 3d 388, 400 (S.D.N.Y. 2015) (internal citations omitted). Generally,

> [a] creditor's remedy in a fraudulent conveyance action is limited to reaching the property which would have been available to satisfy the judgment had there been no conveyance. However, where the assets fraudulently transferred no longer exist or are no longer in the possession of the transferee, a money judgment may be entered against the transferee in an amount up to the value of the fraudulently transferred assets.

*Amusement Indus., Inc. v. Midland Avenue Assocs., LLC*, 820 F. Supp. 2d 510, 528 (S.D.N.Y. 2011) (citation omitted) (collecting New York State cases). Thus, "[i]t is well-established under the DCL that a fraudulent conveyance claim for money damages can only be maintained against parties who participate in the fraudulent transfer of a debtor's property and are transferees of the assets and beneficiaries of the conveyance." *Stochastic Decisions, Inc. v. DiDomenico*, 995 F.2d 1158, 1172 (2d Cir. 1993) (citation omitted) (*per curiam*)). "Since *Stochastic Decisions*, the overwhelming majority of courts have framed this transferee/beneficiary test in the disjunctive, holding that a defendant may be held liable for damages if they are *either* a 'transferee' *or* a

'beneficiary' of the conveyance." *United States v. Lax*, 414 F. Supp. 3d 359, 366 (E.D.N.Y. 2019) (emphasis in original) (collecting cases); *see also Amusement Indus., Inc.*, 820 F. Supp. 2d at 526 ("A fraudulent conveyance claim seeking to recover money damages can only be maintained against a person who participates in the fraudulent transfer as either the transferee of the assets or the beneficiary of the conveyance." (citation omitted)) (collecting cases).

Thus, the Court finds that Plaintiff should also have asserted its DCL §§ 273-a and 276 claims against Holmes as the transferee of the funds. For that reason, the Court declines to adopt the R&R to the extent that it construes Plaintiff's initial complaint (Complaint, Dkt. 1) as properly asserting claims against Holmes without analyzing in what capacity those claims were asserted against Holmes.

## III. Parties' Objections to the R&R

### A. Holmes's Objections

Defendant Holmes objects to the R&R's recommendation to grant summary judgment for Plaintiff as to liability on its fraudulent conveyance claim under DCL § 273-a. Holmes first asserts that the R&R "fail[ed] to consider Holmes'[s] affirmative defenses of equitable estoppel and unclean hands, and thus incorrectly concluded that summary judgment for Emerson was appropriate on the question of liability under DCL § 273-a." (Defendant's Objections ("Def.'s Objs."), Dkt. 70, at 6.) Holmes then contends that Judge Locke "failed to address, let alone analyze, the factual disputes Holmes[] identified in his opposition papers about the economic realities of the transfers allegedly supporting the DCL § 273-a claim, which preclude granting summary judgment on that claim." (*Id.* at 10.) The Court finds these objections to be "merely perfunctory responses argued in an attempt to engage the district court in a rehashing of the same argument[] set forth in the original papers," *Frankel*, 2009 WL 465645, at *2 (internal quotation

marks and alterations omitted), and thus reviews them only for "clear error," *see Chime*, 137 F. Supp. 3d at 187.

DCL § 273-a provides that

> [e]very conveyance made without fair consideration when the person making it is a defendant in an action for money damages or a judgment in such an action has been docketed against him, is fraudulent as to the plaintiff in that action without regard to the actual intent of the defendant if, after final judgment for the plaintiff, the defendant fails to satisfy the judgment.

N.Y. Debt. & Cred. § 273-a. "To prevail on a claim under DCL § 273-a, a plaintiff must establish (1) that the conveyance was made without fair consideration; (2) that the conveyor is a defendant in an action for money damages or that a judgment in such action has been docketed against him; and (3) that the defendant has failed to satisfy the judgment." *Grace v. Bank Leumi Tr. Co. of N.Y.*, 443 F.3d 180, 188 (2d Cir. 2006); *see also Mitchell v. Garrison Protective Servs., Inc.*, 579 F. App'x 18, 21 (2d Cir. 2014) (summary order) (same). The party challenging the conveyance bears the burden of proving an absence of fair consideration. *See United States v. McCombs*, 30 F.3d 310, 324 (2d Cir. 1994). "Fair consideration is comprised of two elements—good faith and the payment of a fair equivalent value for the property interest conveyed." *Allstate Ins. Co. v. Mirvis*, No. 08-CV-4405 (SLT) (PK), 2017 WL 3981157, at *4 (E.D.N.Y. July 31, 2017) (internal quotation marks and citation omitted), *report and recommendation adopted*, 2017 WL 6029128 (E.D.N.Y. Dec. 5, 2017). "[T]he recipient of the debtor's property[ ] must . . . convey property in exchange[,] . . . and . . . such exchange must be a 'fair equivalent' of the property received . . . [and] must be 'in good faith.'" *In re Sharp Int'l Corp.*, 403 F.3d 43, 53 (2d Cir. 2005) (internal quotation marks and citation omitted). DCL § 273-a does not require fraudulent intent. *See Chen v. New Trend Apparel, Inc.*, 8 F. Supp. 3d 406, 419 n.3 (S.D.N.Y. 2014).

The Court finds no clear error in Judge Locke's determination that there is no dispute that "AMA was a defendant in the underlying litigations that resulted in the unpaid Judgments and that the Judgments have not been satisfied." (R&R, Dkt. 65, at 19 (citing Pl.'s 56.1, Dkt. 56, ¶¶ 6, 36, 38; Holmes's 56.1, Dkt. 64, ¶¶ 6, 36, 38).) Additionally, there is no clear error in the R&R's finding that there is no genuine dispute regarding fair consideration. (*Id.*) Although Defendant Holmes argues that the conveyances AMA made to him were not fraudulent, he does not raise any facts to dispute Plaintiff's claim that these conveyances were not made with fair consideration. (*Id.*) As the R&R notes, despite Holmes's characterization of at least part of the conveyances as "interest payments on shareholder loans made by Holmes to AMA," under New York State law, "insider" conveyances made "even as repayments of a preexisting debt, are deemed to lack fair consideration as a matter of law." (*Id.* (quoting *First Keystone Consultants, Inc. v. Schlesinger Elec. Contractors, Inc.*, 871 F. Supp. 2d 103, 118 (E.D.N.Y. 2012)).) Moreover, the Court finds no clear error in the determinations that Holmes's "brief assertion" that he "paid fair and justified consideration for CSI" does not raise a question of material fact with respect to consideration, and that Holmes's payment to AMA for the CSI stocks, standing alone, is insufficient to genuinely dispute the conclusion that this payment was not made "in good faith" and was not of a "fair equivalent value" for the stocks conveyed by AMA to Holmes. (*Id.* at 19–20 (internal record citations omitted).)

For these reasons, the Court adopts the portion of the R&R recommending that summary judgment be granted to Plaintiff regarding Defendant Holmes's liability under DCL § 273-a, *if* it is established that Holmes is AMA's alter ego. However, the Court modifies the R&R to clarify that, in light of the Court's decision to deny summary judgment on Plaintiff's veil-piercing claim,

discussed *infra*, Plaintiff is not entitled to summary judgment even as to Holmes's liability under DCL § 273-a at this time.

**B. Plaintiff's Objections**

Plaintiff raises five objections to Judge Locke's R&R—three pertaining to Plaintiff's summary judgment motions, and one relating to the Plaintiff's default judgment motion against AMA. In the interests of efficiency, the Court addresses these objections in related groups.

**a. Objections Relating to Plaintiff's Summary Judgment Motion**

In objections one, two, and four, Plaintiff argues that the R&R erred in finding that there was a question of fact that precluded a decision on summary judgment. (Plaintiff's Objections to the R&R ("Pl.'s Objs."), Dkt. 69, at 7–20, 23–25.) All three of these objections consist of arguments raised before Judge Locke (*see generally* Dkt. 58) and will thus be reviewed for clear error only. *See Bassett v. Elec. Arts, Inc.*, 93 F. Supp. 3d 95, 101 (E.D.N.Y. 2015).

**(a) Objection 1: Damages for DCL § 273-a Claim**

Plaintiff first objects to the R&R's recommendation that Plaintiff be denied summary judgment as to the damages portion of its DCL § 273-a claim and that damages be determined at trial. (*See* R&R, Dkt. 65, at 21–22.) Plaintiff argues that the R&R "erroneously concluded that the amount of the conveyances made by AMA to Holmes during the underlying litigations is in dispute." (Pl.'s Objs., Dkt. 69, at 4 (internal quotation marks and record citation omitted).) The Court agrees with Judge Locke's conclusion that there remains a factual dispute regarding the monetary amount of the conveyances that AMA made to Holmes based on the parties' competing expert reports, which present conflicting information as to the valuation of the conveyances and "constitute evidence upon which 'a reasonable jury could return a verdict for the nonmoving party.'" (R&R, Dkt. 65, at 20–21 (quoting *Hamblin v. British Airways PLC*, No. 09-CV-3077

(BMC), 2010 WL 11626906, at *5 (E.D.N.Y. Aug. 12, 2010)).) Plaintiff argues that the reduction in the fraudulent conveyance amount in Holmes's expert's opinion is "based on a manifestly groundless fiction and was insufficient to create an issue of fact." (Pl.'s Objs., Dkt. 69, at 8–9.) To the extent that Plaintiff argues that Holmes's unverified expert report is inadmissible on summary judgment, the Court finds no clear error in Judge Locke's determination that, while an unsworn document is generally inadmissible on a motion for summary judgment, Plaintiff waived that objection because it possessed the defense's expert report for almost a year prior to filing its motion for summary judgment, and not only failed to object to the report, but submitted it as an exhibit in support of its motion for summary judgment and relied on it for its Rule 56.1(a) Statement of Facts. (*See* R&R, Dkt. 65, at 20 n.3.)

For these reasons, the Court rejects Plaintiff's first objection.

**(b) Objection 2: Piercing the Corporate Veil**

Plaintiff contends, in its second objection, that the R&R incorrectly concluded that "there are legitimate questions of fact regarding Holmes's domination and control over AMA and his use of that domination and control to avoid paying Emerson on the Judgments" and "to commit a wrong against Emerson." (Pl.'s Objs., Dkt. 69, at 5.) Plaintiff is seeking summary judgment on its claim to pierce AMA's corporate veil and hold Holmes liable for both Judgments against Defendant AMA. (Pl.'s Objs., Dkt. 69, at 14.)

"New York courts have made clear that the veil-piercing standard is demanding. The Court of Appeals has repeatedly emphasized that those seeking to pierce the corporate veil bear a heavy burden." *Am. Federated Title Corp.*, 126 F. Supp. 3d at 402 (internal quotation marks and alterations omitted) (collecting New York State cases). As the R&R correctly explained:

> Under New York law, a party seeking to pierce the corporate veil must show that (1) the alleged alter ego exercised complete domination over the corporation with

> respect to the transaction at issue; and (2) such domination was used to commit a fraud or wrong that injured the party seeking to pierce the corporate veil.

*First Keystone Consultants*, 871 F. Supp. 2d at 124 (citing *MAG Portfolio Consul, GMBH v. Merlin Biomed Grp. LLC*, 268 F.3d 58, 63 (2d Cir. 2001)). To determine whether domination—the first requirement—has been met, the court considers ten equitable factors:

> (1) the absence of formalities and paraphernalia that are part and parcel of the corporate existence, *i.e.*, issuance of stock, election of directors, keeping of corporate records and the like, (2) inadequate capitalization, (3) whether funds are put in and taken out of the corporation for personal rather than corporate purposes, (4) overlap in ownership, officers, directors, and personnel, (5) common office space, address and telephone numbers of corporate entities, (6) the amount of business discretion displayed by the allegedly dominated corporation, (7) whether the related corporations deal with the dominated corporation at arm['s] length, (8) whether the corporations are treated as independent profit centers, (9) the payment or guarantee of debts of the dominated corporation by other corporations in the group, and (10) whether the corporation in question had property that was used by other of the corporations as if it were its own.

*Sentry Ins. v. Brand Mgmt. Inc.*, 120 F. Supp. 3d 277, 286 (E.D.N.Y. 2015), *aff'd sub nom. Sentry Ins. a Mut. Co. v. Weber*, 720 F. App'x 639 (2d Cir. 2017) (summary order); *see also Wm. Passalacqua Builders, Inc. v. Resnick Developers S., Inc.*, 933 F.2d 131, 139 (2d Cir. 1991). Although no one factor is determinative in deciding if complete control exists, *see Broadridge Sec. Processing Sols., LLC v. Khashoggi*, 507 F. App'x 57, 57–58 (2d Cir. 2013) (summary order), the second factor must establish "a nexus between the failure to maintain separate corporate formalities and the wrong suffered by the plaintiff," *Johnson & Johnson Consumer Cos., Inc. v. Aini*, No. 02-CV-6624 (DLI), 2009 WL 6055841, at *7 (E.D.N.Y. Dec. 1, 2009) (citing *Freeman v. Complex Computing Co., Inc.*, 119 F.3d 1044, 10553 (2d Cir. 1997)).

With respect to complete domination, the R&R noted that "it is undisputed that Holmes is the one-hundred percent owner of AMA," and that "AMA's corporate address was the same as Holmes's personal residence during the litigations that resulted in the unpaid Judgments," but

concluded that the parties' experts' disputes with respect to AMA's business model and the relationship between Holmes and AMA provided sufficient material questions of fact to preclude a finding on summary judgment. (R&R, Dkt. 65, at 28–29.) The Court finds no clear error in that determination. The Court further finds no clear error in Judge Locke's conclusion that the parties' dispute as to whether Holmes used AMA to commit a wrong against Emerson raises sufficient facts in dispute to preclude summary judgment. (*Id.* at 30.) Judge Locke correctly determined that, although the diversion of funds to make a corporation judgment-proof constitutes a wrong for the purpose of veil-piercing (*id.* (citing *First Keystone Consultants*, 871 F. Supp. 2d at 127)), there still remain questions of fact as to whether the conveyances were specifically made for the improper purpose of rendering AMA judgment-proof (*id.*). As the R&R outlined, Defendant Holmes's expert presented evidence that Holmes could not have stripped AMA's assets to make it insolvent, as AMA "historically had little assets." (R&R, Dkt. 65, at 30 (quoting Holmes's Expert Report, Dkt. 57-43, at 3).) Additionally, the parties dispute whether CSI was obligated to fund the Judgments under the Assignment and Assumption Agreement. (*Id.* (citing Holmes's 56.1(a), Dkt. 64, ¶¶ 54–55; Plaintiff's Reply, Dkt. 63, at 8).)

For these reasons, the Court rejects Plaintiff's second objection and further finds no clear error in Judge Locke's determination that there are sufficient material facts in dispute to preclude summary judgment as to Plaintiff's motion to pierce AMA's corporate veil.

**(c) Objection 4: DCL § 276**

DCL § 276 provides that "[e]very conveyance made and every obligation incurred with actual intent, as distinguished from intent presumed in law, to hinder, delay, or defraud either present or future creditors, is fraudulent as to both present and future creditors." N.Y. Debt. & Cred. § 276.

> To prove actual fraud under [DCL] § 276, a creditor must show intent to defraud on the part of the transferor. Where actual intent to defraud creditors is proven, the conveyance will be set aside regardless of the adequacy of consideration given. As actual intent to hinder, delay, or defraud constitutes fraud, it must be pled with specificity, as required by Fed. R. Civ. P. 9(b). Moreover, the burden of proving actual intent is on the party seeking to set aside the conveyance.

*In re Sharp Int'l Corp.*, 403 F.3d at 56 (internal quotation marks, citations, and alterations omitted). "Due to the difficulty of proving actual intent[,] . . . the pleader is allowed to rely on 'badges of fraud' to support his case, *i.e.*, circumstances so commonly associated with fraudulent transfers that their presence gives rise to an inference of intent." *Id.* (quoting *Wall St. Assocs. v. Brodsky*, 684 N.Y.S.2d 244, 247 (App. Div. 1999)). "'[B]adges of fraud' may include (*inter alia*): a close relationship between the parties to the alleged fraudulent transaction; a questionable transfer not in the usual course of business; inadequacy of the consideration; and retention of control of the property by the transferor after the conveyance." *Id.* (internal quotation marks, citations, and alterations omitted).

> Of course, the flip side of these badges of fraud is that their absence—or evidence that fair consideration was paid, the parties dealt at arm's-length, the transferor was solvent, the transfer was not questionable or suspicious, the transfer was made openly, or the transferor did not retain control—would constitute evidence that there was no intent to defraud.

*Lippe v. Bairnco Corp.*, 249 F. Supp. 2d 357, 375 (S.D.N.Y. 2003); *see also Techno-Comp., Inc. v. Arcabascio*, 130 F. Supp. 3d 734, 745 (E.D.N.Y. 2015) (same). Summary judgment is inappropriate when there is a dispute over fraudulent intent. *See Aguirre v. Best Care Agency, Inc.*, 961 F. Supp. 2d 427, 451–52 (E.D.N.Y. 2013).

In its fourth objection, Plaintiff argues that the R&R erred in finding that "there are questions of fact regarding Holmes'[s] alleged intent to defraud" Emerson. (Pl.'s Objs., Dkt. 69, at 6.) However, the Court finds no clear error in Judge Locke's determination on this issue. (R&R, Dkt. 65, at 22–24.) *See Aguirre*, 961 F. Supp. 2d at 451 ("Intent to defraud is ordinarily a question

of fact which cannot be resolved on a motion for summary judgment." (internal quotation marks and citation omitted)); *Abu Dhabi Commercial Bank v. Morgan Stanley & Co. Inc.*, 888 F. Supp. 2d 478, 484 (S.D.N.Y. 2012) ("In New York, a plaintiff alleging fraud must establish each element of its fraud claim by 'clear and convincing evidence.'" (citing *Merrill Lynch & Co., Inc. v. Allegheny Energy, Inc.*, 500 F.3d 171, 181 (2d Cir. 2007))); *Insinga v. Cooperatieve Centrale Raiffeisen Borenleenbank B.A.*, No. 03–CV–7775 (RJH), 2005 WL 2345293, at *8 (S.D.N.Y. Sept. 20, 2005) ("To be sure, issues of fraudulent intent are generally left for resolution by the factfinder." (citing *Nat'l Union Fire Ins. Co. of Pittsburgh v. Turtur*, 892 F.2d 199, 205 (2d Cir. 1989))). As the R&R explained, Plaintiff did not cite to a single statement of fact to support its five "undisputed" badges of fraud, and Holmes's expert provided evidence to refute Plaintiff's allegations of Holmes's intent to defraud. (*Id.* at 23.) Accordingly, the Court rejects Plaintiff's fourth objection and the denial of summary judgment to Plaintiff on its DCL § 276 claim.

**2. Objection Relating to Default Judgment Motion**

In its fifth objection, Plaintiff argues that the R&R erroneously recommends the denial of Plaintiff's motion for default judgment against AMA as to Plaintiff's claims under DCL §§ 273-a and 276. Because Plaintiff relies on the same arguments made to, and considered by, Judge Locke, the Court also reviews the relevant portions of the R&R for clear error.

Under FRCP 55, the process for seeking default judgment against a party who "fails to defend" in a matter consists of two steps: "first, the entry of a default, and second, the entry of a default judgment." *City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 128 (2d Cir. 2011) (internal quotation marks and citation omitted). "The first step, entry of a default, formalizes a judicial recognition that a defendant has, through its failure to defend the action, admitted liability to the plaintiff." *Id.* "[A] party's default is deemed to constitute a concession of all well pleaded

allegations of liability." *United States v. DiPaolo*, 466 F. Supp. 2d 476, 482 (S.D.N.Y. 2006) (quoting *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992)). Here, a Certificate of Default was entered as to AMA on October 25, 2016. (Dkt. 16.)

"The second step, entry of a default judgment, converts the defendant's admission of liability into a final judgment that terminates the litigation and awards the plaintiff any relief to which the court decides it is entitled, to the extent permitted by Rule 54(c)." *Mickalis Pawn Shop*, 645 F.3d at 128 (footnote omitted). "Assuming the plaintiff demonstrates proper service, the decision to grant a motion for a default judgment lies in the sound discretion of the trial court." *O'Callaghan v. Sifre*, 242 F.R.D. 69, 73 (S.D.N.Y. 2007) (citing *Shah v. N.Y. State Dep't of Civil Serv.*, 168 F.3d 610, 615 (2d Cir. 1999)). Default judgments "track[] the ancient common law axiom that a default is an admission of all well-pleaded allegations against the defaulting party." *Vt. Teddy Bear Co., Inc. v. 1-800 Beargram Co.*, 373 F.3d 241, 246 (2d Cir. 2004). "However, it is also true that a district court need not agree that the alleged facts constitute a valid cause of action." *Mickalis Pawn Shop*, 645 F.3d at 137 (internal quotation marks and citation omitted). Therefore, the Court is "required to determine whether [Plaintiff's] allegations establish [Defendant's] liability as a matter of law." *Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009) (citation omitted).

The R&R recommends that the Court deny Plaintiff's motion for default judgment pursuant to FRCP 55 against AMA on its claims for fraudulent conveyance under DCL §§ 273-a and 276 because Plaintiff named the wrong Defendant. (R&R, Dkt. 65, at 31–32.) In its fifth objection, Plaintiff argues that, in reaching this conclusion, the R&R erroneously found that AMA, as the transferor rather than the transferee, was not the proper defendant for Plaintiff's judgment enforcement claims. (Pl.'s Objs., Dkt. 69, at 25.) For the reasons that follow, the Court declines

to adopt Judge Locke's recommendation to deny Plaintiff a default judgment as to Defendant AMA.

As a result of AMA's default (Dkt. 16), the R&R admitted the well-pleaded allegations against AMA in the Complaint, except as to the amount of damages. (R&R, Dkt. 65, at 31 (citing *Allstate Ins. Co. v. Howell*, No. 09-CV-4660 (RJD) (VVP), 2013 WL 5447152, at *2 (E.D.N.Y. Sept. 30, 2013)).) *See also* Fed. R. Civ. P. 8(b)(6) ("An allegation—other than one relating to the amount of damages—is admitted if a responsive pleading is required and the allegation is not denied."). However, in deciding whether to grant default judgment on the allegations in the complaint, the court has the "responsibility to ensure that the factual allegations, accepted as true, provide a proper basis for liability and relief." *Ferrera v. Tire Shop Ctr.*, No. 14-CV-04657 (FB) (LB), 2015 WL 3562624, at *2 (E.D.N.Y. Apr. 6, 2015) (internal quotation marks and citation omitted), *report and recommendation adopted*, 2015 WL 3604078 (E.D.N.Y. June 5, 2015). Accordingly, the court must determine whether Plaintiff's allegations establish Defendant's liability "as a matter of law" in order to grant default judgment. *Bricklayers & Allied Craftworkers Local 2, Albany, N.Y. Pension Fund v. Moulton Masonry & Constr., LLC*, 779 F.3d 182, 187 (2d Cir. 2015) (citation omitted).

For many of the same reasons discussed *supra*, the Court finds that Defendant AMA may be held liable to the extent that Plaintiff is seeking to void the fraudulent conveyances from AMA to Holmes—which is what Plaintiff is seeking. (*See, e.g.*, Pl.'s Supp. Br., Dkt. 78, at 25 ("Emerson does not seek a redundant monetary Judgment against AMA for the amounts already owed in the Final Judgments against AMA in the underlying actions, [but] does seek a default judgment establishing that AMA engaged in the fraudulent conveyances to its sole insider, Holmes, in order to avoid having to satisfy its obligations under the Final Judgments.").) *See Stochastic Decisions*,

995 F.2d at 1172; *Lax*, 414 F. Supp. 3d at 366. Thus, Judge Locke's determination that AMA is not the proper defendant for claims for money damages under DCL §§ 273-a and 276 is modified because Plaintiff is not seeking money damages against AMA. For the reasons previously discussed, the Court finds that AMA is liable under DCL § 273-a to the extent that Plaintiff seeks to void the fraudulent conveyances that AMA made to Holmes.

**III. Plaintiff's Summary Judgment Motion as to Affirmative Defenses**

Though originally presented as an objection to the R&R's recommendations regarding Plaintiff's motion to strike Holmes's affirmative defenses (*see* Pl.'s Objs., Dkt. 69, at 6), because that motion is now moot, the Court instead addresses Plaintiff's contentions regarding Holmes's assertion of the "unclean hands" and "equitable estoppel" defenses[9] to Plaintiff's veil-piercing claim as part of its newly filed summary judgment motion. (Pls.' Supp., Dkt. 78, at 5–6).[10] As described *supra*, Plaintiff's original motion to strike is moot. The Court now determines for the first time whether Plaintiff is entitled to summary judgment as to Holmes's newly asserted affirmative defenses with respect to Plaintiff's DCL §§ 273-a and 276 claims.

---

[9] In his Amended Answer, Holmes newly asserts a third affirmative defense of "[t]he *Brunswick* Doctrine." (Dkt. 76-2, at 26–28.) However, Holmes admits that "he is not citing to or relying on a specific, court-identified 'doctrine' as a defense" and that "it is immaterial whether [his] '*Brunswick* defense' is viewed as an independent defense or simply further support for [his] equitable estoppel defense." (Def.'s Supp, Dkt. 79, at 10.) Thus, the Court analyzes the third affirmative defense, the "*Brunswick* Doctrine," as an extension of Holmes's "equitable estoppel" affirmative defense.

[10] Although the R&R found that Holmes's affirmative defenses were insufficiently pled (R&R, Dkt. 65, at 12–14), Holmes remedied this deficiency by pleading sufficient factual allegations under the Second Circuit's intervening *GEOMC* pleading standard. (*See* Order, Oct. 21, 2019; Am. Answer, Dkt. 76-2, at 26–28.)

**A. Equitable Estoppel**

As previously discussed, Plaintiff seeks to pierce AMA's corporate veil in order to enforce the Judgments against Holmes as AMA's alter ego. In his Amended Answer, Holmes asserts as an affirmative defense that Plaintiff should be equitably estopped from piercing AMA's corporate veil because, when Plaintiff contracted with Defendants, it knew that AMA was effectively a dummy corporation that Holmes had created solely as a vehicle to carry out the deal and to shield Holmes from personal liability. (Am. Answer, Dkt. 76-2, at 23–25.)

In *Brunswick Corporation v. Waxman*, 599 F.2d 34 (2d Cir. 1979), the Second Circuit applied the equitable estoppel doctrine against a plaintiff seeking to pierce a defendant's corporate veil, finding that when a party enters into an agreement with a corporation with actual or implied knowledge that the corporation's owner wishes to avoid personal liability and thus creates a "dummy corporation" for the limited purpose of purchase, that party "obtain[s] precisely what it bargained for, and it did not bargain for or contemplate the individual liability of the [Defendant] it now seeks to enforce." *Id.* at 36. The Circuit held that it would thwart justice and equity to pierce the corporate veil in such a situation, *i.e.*, where the plaintiff knowingly entered into a sales contract with a no-asset corporation, knowing that the defendants—the corporation's owners—wished to avoid personal liability by creating the no-asset, dummy corporation for the sole purpose of carrying out the transaction. *See id.* ("The creation of the dummy corporation under these circumstances to eliminate personal responsibility should be respected.").

The parties dispute the applicability of the so-called *Brunswick* defense in this case.

> A defendant may invoke the "*Brunswick* defense" where a plaintiff knew or should have known at the time it entered into a contract with a corporation that the corporation did not have substantial assets and was being used for the sole purpose of avoiding personal liability under a contract. Where there is no genuine issue of material fact as to a plaintiff's knowledge of a corporation's lack of assets, a court may therefore refuse to pierce the corporate veil.

*In re Madison Bentley Assocs., LLC*, No. 16-CV-1083 (GBD), 2016 WL 5793990, at *2, n.3 (S.D.N.Y. Sept. 27, 2016) (internal record citations omitted); *see also Favour Mind Ltd. v. Pac. Shores, Inc.*, No. 98-CV-7038 (GBD), 2004 WL 97649, at *7 (S.D.N.Y. Jan. 20, 2004) ("Where a party is aware of the risks of dealing with a corporation, that party has assumed the risk of such dealings.").

The Court finds that there exists a dispute of material fact relevant to *Brunswick*'s applicability, and thus denies Plaintiff's motion for summary judgment as to the equitable estoppel/*Brunswick* affirmative defense.

The parties dispute whether Plaintiff entered the agreement with AMA with knowledge that it was a no-asset dummy corporation being used for the sole purpose of enabling Holmes to avoid personal liability under the contract. Holmes claims that "[a]t the time Emerson entered into the transaction, it knew that AMA could not own another company, and that Holmes intended to have it owned by another entity or individual" (Def.'s Objs., Dkt. 70, at 8), and argues that "the record evidence amply shows AMA's limited role in the transaction, and that it was nothing more than a 'conduit' for the purpose of the ENPOCS/CSI sale" (Def.'s Supp., Dkt. 79, at 12). Therefore, Holmes contends that Plaintiff had full knowledge of the structure of AMA and Holmes's relationship to it, and thus it would be inequitable "to set aside the parties' agreements to hold Holmes personally liable for AMA's actions and obligations when those agreements did not contemplate personal liability." (*Id.* at 10.) Conversely, Plaintiff cites evidence supporting its characterization of AMA as "a long-standing investment banking and consulting firm that existed for decades prior to its 2006 transaction with ETP that contractually promised to have sufficient funds available to satisfy its payment obligations in connection with the 2006 transaction that was the subject of the underlying litigations and the unpaid Judgments." (Pl.'s Supp., Dkt. 78, at 15;

*see generally id.* at 12–16.) Both parties cite record evidence in support of their contentions. (*Compare* Holmes's Counterstatement of Facts in Opposition, Dkt. 60, at ¶¶ 3, 6–7, 9, 12 (citing record testimony to support the propositions that Plaintiff was aware that "AMA's role was to serve solely as a conduit for the purchase of CSI by Holmes" and did not have knowledge, or seek knowledge, about the source of AMA's funding at the time of the Acquisition Agreement), *with* Pl.'s 56.1, Dkt. 56, ¶ 186 (citing the Acquisition Agreement to demonstrate that Holmes had made representations to Plaintiff on behalf of AMA guaranteeing that AMA would have sufficient funds to pay the Purchase Price and adjustments thereof), *and* Holmes's June 21, 2006 Memorandum, Dkt. 57-22 (describing AMA as "a family oriented operator [that] profit shares with its employees"), *and* AMA's 2009–2011 Tax Returns, Dkts. 57-39 (2009), 57-40 (2010), 57-41 (2011).)

Accordingly, the Court finds that there is a factual dispute regarding whether Plaintiff's actual knowledge of the structure of AMA and Holmes's relationship to it, thus precluding summary judgment on whether Defendant's affirmative defense of equitable estoppel and the "*Brunswick* Doctrine" is applicable.

**B. Unclean Hands**

Plaintiff argues that the contentions underlying Holmes's "unclean hands"[11] defense in this action "could have [been] asserted in the Court[-]mandated Arbitration,[12] were disposed of by the

[11] "In New York, the doctrine of unclean hands requires a defendant to prove (1) that the plaintiff is guilty of immoral, unconscionable conduct directly related to the subject matter in [the] litigation; (2) that the conduct was relied upon by the defendant; and (3) that the defendant was injured thereby." *Lia v. Saporito*, 909 F. Supp. 2d 149, 174 (E.D.N.Y. 2012).

[12] Plaintiff references the Arbitration that resolved the underlying breach of contract actions against AMA, Nos. 08-cv-2128 and 08-cv-2506, which resulted in the judgments that are the subject of post-judgment action.

Arbitrator in the Court-confirmed Arbitration Award and 08-cv-2128 Final Judgment" (Pl.'s Supp., Dkt. 78, at 18) and thus should be barred from re-litigation under the principles of *res judicata* and collateral estoppel (*see id.*; Pl.'s Objs., Dkt. 69, at 22).[13]

As the basis for his unclean hands defense, Holmes alleges that Emerson took CSI's underperforming assets and then marked up old inventory and losses as "goodwill"; emptied CSI's bank accounts on the day of closing to use those funds to pay off its preferred vendors, leaving CSI without cash to pay its own vendors the next day; and went after Holmes despite contractual prohibitions from doing so and without negotiating for Holmes's personal liability. (Am. Answer, Dkt. 76-2, 25–26.)[14] Plaintiff argues that the Court-compelled arbitration in the underlying actions, the Court-confirmed Arbitration Award, and the No. 08-cv-1489 final judgment that resulted from the bench trial before Judge Wexler all constitute final adjudications on the merits

[13] Although Plaintiff did not explicitly argue the *res judicata* theory in its objections to Judge Locke's R&R, the Court construes Plaintiff's argument about Holmes "recast[ing] . . . the claims AMA asserted and lost" (Pl.'s Objs., Dkt. 69, at 22) as asserting claim preclusion. Thus, the Court finds that Plaintiff complied with the Court's directive that the parties' supplemental briefing could "address Plaintiff's summary judgment motion or any other issue already raised in the briefing described in the Court's 9/26/2019 Order." (Order, Dec. 2, 2019.) In any event, because "a district court may raise the issues of *res judicata* and collateral estoppel *sua sponte,*" *Caldwell v. Pesce*, 83 F. Supp. 3d 472, 481 (E.D.N.Y. 2015), *aff'd*, 639 F. App'x 38 (2d Cir. 2016) (summary order), it is appropriate for the Court to reach this question.

[14] Holmes attempts to distinguish his affirmative defense in this action from AMA's previous unclean hands defense by characterizing it as being premised only on Plaintiff's having "dirtied its hands" by pursuing this lawsuit against Holmes personally, despite contractual prohibitions from doing so and despite the fact that it did not negotiate for Holmes's personal liability. (Def.'s Supp., Dkt. 79, at 15.) This effort is unavailing and disingenuously misconstrues the nature of the instant litigation: Plaintiff is only pursuing this lawsuit against Holmes personally because it alleges that Holmes directed fraudulent conveyances of assets from AMA to himself in order to make AMA judgment-proof. Bringing a claim against Holmes for fraudulent conveyance is not "immoral, unconscionable conduct" which the affirmative defense of unclean hands seeks to address, *Lia*, 909 F. Supp. 2d at 174, but rather the very private right of action that was intended by DCL §§ 273-a and 276.

regarding AMA's purchase of CSI, as well as the claims and allegations AMA did assert, and could have asserted in those proceedings, including the unclean hands defense that Holmes now asserts. (Pl.'s Supp., Dkt. 78, at 18–19.)[15] The Court agrees.

"Under the doctrine of res judicata, a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *New York v. Mountain Tobacco Co.*, 942 F.3d 536, 543 (2d Cir. 2019) (quoting *Jacobson v. Fireman's Fund Ins. Co.*, 111 F.3d 261, 265 (2d Cir. 1997)); *see also Maharaj v. Bankamerica Corp.*, 128 F.3d 94, 97 (2d Cir. 1997) ("Under both New York law and federal law, the doctrine of *res judicata*, or claim preclusion, provides that '[a] final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action.'" (citation omitted)). Additionally, "New York's transactional approach to res judicata bars a later claim arising out of the same factual grouping as an earlier litigated claim even if the later claim is based on different legal theories or seeks dissimilar or additional relief." *Mountain Tobacco Co.*, 942 F.3d at 543 (internal quotation marks and citation omitted). "The doctrine of *res judicata*, also known as claim preclusion, bars re-litigation if (1) the previous action involved an adjudication on the merits; (2) the previous action involved the same parties or those in privity with them; and (3) the claims asserted in the subsequent action were, or could have been, raised in the prior action." *Brodsky v. N.Y.C. Campaign Fin. Bd. by Weisman*, 796 F. App'x 1, 3 (2d Cir. 2019) (summary order) (citing *Monahan v. N.Y.C. Dep't of Corr.*, 214 F.3d 275, 285 (2d Cir.

---

[15] Defendant Holmes does not dispute that the arbitration was a final adjudication on the merits. (Def.'s Supp., Dkt. 79, at 15–16.)

2000)). The Court finds that all of the requirements for this doctrine are met and Defendant's "unclean hands" affirmative defense is precluded.[16]

The Court finds the Arbitration Award to be a final judgment and an adjudication on the merits. "Under New York law, an arbitral award has preclusive effect only when it is final, *i.e.*, when (a) the award has been confirmed, (b) vacatur has been denied on the merits, or (c) no vacatur motion is pending and the time limit in which to file a vacatur motion has expired." *Glob. Gold Mining, LLC v. Ayvazian*, 612 F. App'x 11, 13 (2d Cir. 2015) (summary order) (internal quotation marks and citations omitted); *see also In re Am. Ins. Co. (Messinger—Aetna Cas. & Sur. Co.)*, 43 N.Y.2d 184, 189–90, 371 N.E.2d 798 (1977) ("[I]n general the doctrines of claim preclusion and issue preclusion between the same parties (more familiarly referred to as *res judicata* or direct estoppel) apply as well to awards in arbitration as they do to adjudications in judicial proceedings" (citations and footnote omitted)). Here, the award was confirmed by the Honorable Thomas C. Platt (Dec. 17, 2013 Order, Dkt. 57-18), and Holmes did not appeal (Holmes's 56.1, Dkt. 64, ¶ 35).

---

[16] The Court notes that the Supreme Court recently clarified the distinctions between claim preclusion and issue preclusion, and in doing so called the doctrine of defense preclusion into question. *See Lucky Brand Dungarees, Inc. v. Marcel Fashions Grp., Inc.*, 140 S. Ct. 1589, 1594 (2020) ("[The Supreme Court] granted certiorari to resolve differences among the Circuits regarding when, if ever, claim preclusion applies to defenses raised in a later suit." (internal citation omitted)); *see id.* at 1595 n.2 ("There may be good reasons to question any application of claim preclusion to defenses."). However, while the Supreme Court questioned the applicability of claim preclusion to defenses, it did so in dicta and explicitly found that it "need not determine when (if ever) applying claim preclusion to defenses may be appropriate, because [the case before it lacked] a necessary predicate—[the] identity of claims . . . ." *Id.* The case before this Court does not lack that predicate. Moreover, as the Supreme Court acknowledged, the facts of its case "are far afield" from a judgment-enforcement action. *Id.* at 1597. As described *infra*, regardless of the nomenclature, the facts before this Court are exactly what the claim preclusion doctrine was designed to address. Any defense to the underlying actions should have been asserted during the pendency of those litigations. To permit otherwise would impermissibly threaten the previously issued judgments, *cf. id.*, and allow Defendant a second bite at the proverbial apple.

Under New York law, the Arbitration Award was final, and thus has preclusive effect under the *res judicata* doctrine.

Indeed, the Arbitration Award extensively analyzes AMA's inventory representation claims, including with regard to the condition and utility of inventory, and the propriety of the inventory's reported value. (Nov. 7, 2013 Arbitration Award, Dkt. 57-16, at 9–13.) The Arbitrator denied AMA's claim for an adjustment due to alleged inventory misrepresentations, finding that ETP had not misrepresented the value of the inventory. (*Id.* at 13.) Additionally, the Arbitration Award addressed and resolved various disputes over accounts after closing. (*Id.* at 5–6.) Thus, the Court finds that the foundation upon which Defendant seeks to sustain his "unclean hands" affirmative defense, as reflected in his Amended Answer (Amended Answer, Dkt. 76-2, 25–26), consists of claims that already have, or could have, been raised before the arbitrator in the actions underlying this litigation.

Finally, the Court agrees with Plaintiff that Holmes is indisputably in privity with AMA, the party in the previous action, for the purposes of *res judicata* and collateral estoppel. Holmes was the sole owner and operator of AMA. (*See* Holmes's Counterstatement of Facts in Opposition, Dkt. 60, ¶¶ 6–8; Holmes's 56.1, Dkt. 64, ¶¶ 5, 43–44, 46–47, 63, 66.) *See also Emerson Elec. Co.*, 2012 WL 976051, at *4 ("Defendant is 100%-owned and controlled by one person: Charles S. Holmes. Following the closing, Holmes also owned and controlled CSI in its entirety." (record citations omitted)). A corporate officer and sole owner of a corporation is in privity with the corporation. *See Hayashi v. Ozawa*, No. 17-CV-2558 (AJN), 2018 WL 1737232, at *1 (S.D.N.Y. Mar. 19, 2018) (citations omitted); *see also Burberry Ltd. v. Horowitz*, No. 12-CV-1219 (PAC), 2012 WL 5904808, at *6 (S.D.N.Y. Nov. 26, 2012), (finding that defendant, who was the sole shareholder and officer of a corporate entity in a prior action and was solely responsible for the

actions of the corporate entity, was in privity with that entity), *aff'd*, 534 F. App'x 41 (2d Cir. 2013) (summary order). Holmes does not dispute Plaintiff's contention that he is in privity with AMA. (*See* Def.'s Supp., Dkt. 79, at 15–16.) Instead, he seems to confirm such privity, alleging as part of his affirmative defense that "Emerson did not act fairly and without fraud or deceit in the *underlying transaction involving AMA and Holmes*." (Amended Answer, Dkt. 76-2, 25 ¶ 13 (emphasis added).)

Accordingly, the Court finds that Defendant's "unclean hands" affirmative defense is precluded by the doctrine of *res judicata*.[17]

**CONCLUSION**

For the reasons contained herein, the Court adopts in part, modifies in part, and declines to adopt in part Judge Locke's recommendations. The Court denies summary judgment on the liability portion of Plaintiff's DCL § 273-a claim as to Defendant Holmes because there are sufficient material facts in dispute to preclude a decision as to whether Plaintiff may pierce the corporate veil and hold Holmes liable as AMA's alter ego. The Court also denies summary judgment on Plaintiff's DCL § 276 claim in its entirety. The Court grants Plaintiff's motion for a default judgment as to Defendant AMA, but only to the extent that Plaintiff seeks to void the fraudulent conveyances made by AMA to Holmes. Finally, the Court grants summary judgment dismissing Defendant Holmes's "unclean hands" affirmative defense and denies summary judgment on his "equitable estoppel" affirmative defense.

[17] Plaintiff also argues that an "unclean hands" defense only applies to "equitable relief," and cannot be invoked in defense of claims or legal relief. (Pl.'s Supp., Dkt. 78, at 17.) Having disposed of this affirmative defense on *res judicata* grounds, the Court declines to address this argument.

The Court shall hold a status conference via telephone with the parties on September 1, 2020, at 2 p.m., to discuss whether Plaintiff should be permitted to amend its complaint to allege a monetary damages claim against Holmes under DCL §§ 273-a and 276 as the transferee or beneficiary of the assets fraudulently conveyed by AMA. The parties shall call 1-888-684-8852, and use access code 7245547, to participate in the conference.

SO ORDERED.

/s/ Pamela K. Chen
Pamela K. Chen
United States District Judge

Dated: August 11, 2020
Brooklyn, New York